[S.F. No. 23438. Nov. 10, 1976.]

HUGH SNYDER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Hugh Snyder, in pro. per., and Everett D. Hofmeister for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

## OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar that petitioner be disbarred.

Petitioner was admitted to practice on June 13, 1962, and has no prior disciplinary record. He was charged with the violation of his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068), with deceit (§ 6128, subd. (a)), wilfully violating former rules 11, 13, 15, 16 and 17 of the Rules of Professional Conduct in effect prior to January 1, 1975, and the commission of acts involving moral turpitude, dishonesty and corruption within the meaning of section 6106 of the Business and Professions Code. The investigation into petitioner's misconduct resulted from complaints by members of the bar.

After an evidentiary hearing, the local committee made findings and by a vote of two to one recommended disbarment. Upon review the board made its own findings, generally following those of the committee, and by a vote of ten to two recommended disbarment. The petition for review consisted of a request to produce additional evidence concerning petitioner's mental state at the time of his misconduct and did not challenge the findings of the board. We denied his request to produce additional evidence.

KING MATTER (Count One)

Petitioner defended Terrance (Tom) King in an unlawful detainer action. About an hour before the time set for King's court-ordered deposition, petitioner filed an involuntary bankruptcy petition against his client's landlord to impede the unlawful detainer proceedings and advised King not to appear for the deposition notwithstanding a court order. After judgment was rendered against his client in the unlawful detainer action, petitioner obtained an order from the bankruptcy court temporarily restraining the sheriff from proceeding on the judgment. The bankruptcy petition had falsely alleged that petitioner's client was a creditor and was ultimately dismissed. The unjustified filing of the petition and obtaining the restraining order were for the purpose of

harassment and to delay the landlord's obtaining possession of an apartment leased to petitioner's client.

MR. STEAK MATTER (Count Two)

In late 1971 and 1972 petitioner represented Alvin C. Molen and Russell and Mitzi Alden against a number of people regarding their respective ownership rights in certain franchised restaurants known as Mr. Steak of Sacramento, Inc. (hereinafter "Mr. Steak"). Petitioner's clients were friends of Mr. King and had been referred to him by King. Ten actions were filed in Sacramento Superior Court, in some of which petitioner's clients were the plaintiffs and in others they were the defendants.

In one of the actions petitioner sought and obtained a temporary restraining order from Judge Perluss restraining the opposing parties from interfering with his clients' operation of a Mr. Steak restaurant. He failed to disclose to Judge Perluss the existence of another action pending between the same parties in which petitioner and his clients had been ordered by Judge Gallagher the day before to provide business records relating to Mr. Steak to opposing parties and their counsel. In obtaining the restraining order petitioner intended to impede. the enforcement of the lawful order obtained in another action and did not disclose his intention to Judge Perluss.

Petitioner engaged in offensive personality by preparing and filing a declaration of one of his clients that referred to the opposing parties as "flannel-mouth" and "The Mouche" and referred to their attorneys as "alleged attorneys." On one occasion he was deliberately and purposely evasive and intentionally failed to answer proper questions propounded to him in a deposition. On another occasion he advised his clients not to appear for a deposition in violation of a court order.

With no knowledge to reasonably support it, petitioner filed an affidavit in support of a motion for change of venue in which he stated on information and belief: "[T]hat there are no Superior Court Judges in the County of Sacramento, State of California competent to sit without bias or prejudice and hear any issues of fact relating to any of the above-numbered [Mr. Steak] actions."

Sometime in late February or early March 1972 petitioner communicated with Judge Perluss, without notice to or presence of opposing counsel, and attempted to have the judge sign an order granting his clients possession of a Mr. Steak restaurant. Judge Perluss informed petitioner that he would not issue such an order ex parte since the effect of such an order would be to adjudicate the rights of the parties to possession. On March 8, 1972, in the absence of opposing counsel, petitioner presented to Judge Perluss for his signature an order which was stated to be a formalization of a prior minute order of November 17, 1971. While such fact was true, petitioner wilfully failed to disclose to Judge Perluss that he intended to use said order to regain for his clients possession of a Mr. Steak restaurant. Petitioner thereafter falsely represented to deputy sheriffs that the import of the order entitled his clients to possession.

In the meantime petitioner filed an involuntary petition in bankruptcy against Mr. Steak alleging that his client, Molen, had a provable creditor's claim. The allegation was false and known by petitioner to be false with intent to deceive, and the bankruptcy proceeding was commenced to harass and delay opposing parties in proceedings pending in superior court.

Several months later petitioner filed a second involuntary petition in bankruptcy against Mr. Steak, purportedly signed by Russell and Mitzi Alden. Russell Alden had not authorized the filing of the petition and did not sign it. Petitioner told a notary that the signatures were those of the Aldens. He knew the notarization was not genuine in that Russell Alden did not personally appear before the notary.

The Alden bankruptcy petition was based upon a purported judgment entered in one of the superior court actions on September 22, 1972, which judgment was in turn based on a document offered by petitioner as a confession of judgment for $105,188.75. The alleged confession of judgment was forged by petitioner by fraudulently altering a document originally entitled "Assignment of Contract," signed in blank by four principals of Mr. Steak in 1968 or 1969. This bankruptcy proceeding was commenced by petitioner out of spite and for the purpose of delaying and harassing opposing parties in an attempt to stay any further proceedings in all Mr. Steak actions then pending in superior court.

Since petitioner has not challenged any of the board's findings he has not met his burden of demonstrating that they are not supported by the evidence or that the board's recommendation is erroneous or unlawful. (*Bluestein* v. *State Bar* (1974) 13 Cal.3d 162, 170-171 [118 Cal.Rptr. 175, 529 P.2d 599].)

The record discloses grievous misconduct and abuse of court process and procedures. Petitioner's acts involved dishonesty and moral turpitude (Bus. & Prof. Code, § 6106); they constituted wilful disobedience of court orders and repeated breaches of his oath and duties as an attorney (Bus. & Prof. Code, §§ 6067, 6068, 6103) and misdemeanors (Bus. & Prof. Code, § 6128, subd. (a) [proscribing deceit of the court or any party]). Many of his acts involved wilful breaches of the Rules of Professional Conduct prescribing the duties of an attorney in dealing with courts, witnesses and parties.

Petitioner's fraudulent transformation of an assignment of contract form into a confession of judgment and knowingly offering it as genuine to obtain a judgment[1] thereon were reprehensible acts of moral turpitude and dishonesty. (Bus. & Prof. Code, § 6106.) His filing involuntary bankruptcy petitions containing false allegations for the purpose of harassment and delay violated section 6068, subdivisions (c), (d) and (g) and section 6128, subdivision (a) of the Business and Professions Code, as well as rule 13 of the Rules of Professional Conduct.

Petitioner's advising his clients on two occasions to make their testimony unavailable as deposition witnesses, despite court orders, constituted wilful violations of rule 15, Rules of Professional Conduct.

Throughout his handling of the Mr. Steak matters, petitioner engaged in different forms of concealment or deceit. In obtaining an order from one judge, petitioner concealed the fact that another order affecting the same parties had been entered the day before by another judge. He obtained an ex parte order, knowingly failing to disclose his intended use thereof, in violation of section 6068, subdivision (d) and section 6128, subdivision (a). His attempt to take advantage of the order by misleading officers of the sheriff's department as to its legal effect was dishonest. (Bus. & Prof. Code, § 6106.)

---

[1]Petitioner is currently facing criminal prosecution arising out of his use of the fraudulently prepared confession.

Petitioner's unwarranted charge of bias and prejudice against all the superior court judges violated his duty to "maintain the respect due to the courts of justice and judicial officers." (Bus. & Prof. Code, § 6068, subd. (b).) He again violated his duty as an attorney when he prepared a declaration for his client containing offensive descriptions of the opposing parties and counsel. (Bus. & Prof. Code, § 6068, subd. (f).)

Further, petitioner wilfully violated rule 16, Rules of Professional Conduct, by communicating with a judge in the absence of opposing counsel, concerning the merits of an action that he knew was contested at the time. Finally, in his own deposition he gave deliberately evasive testimony and failed to answer proper questions, in violation of his duty to "employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth." (Bus. & Prof. Code, § 6068, subd. (d).)

Petitioner's defense was that his mental and emotional state was such that he was unable to use his independent judgment and was under the influence of Mr. King.[2] At the beginning of their relationship, petitioner had been led to believe that King was a lawyer. He considered him exceptionally capable and was so much in awe of King's personality and ability that he simply did whatever King told him without question. Petitioner testified that prior to November 8, 1971, he respected King. On that date, at the suggestion of Judge Gallagher and with the consent of his clients, he entered into a stipulation with counsel for Mr. Steak to allow Alvin Molen's son to continue operating one of the Mr. Steak restaurants for the time being and to deposit the receipts in a separate account until their disputes were resolved. When King learned of the stipulation he berated petitioner for his incompetence and told him that he (King) was going to control petitioner's conduct in the future. Petitioner became hysterical and "was scared stiff of him after that." He believed he was being watched by people who reported to King and had to do exactly what King said. He feared that King had bugged his car and his office, but found no evidence of it. He did not report his fears to law enforcement officers until December 29, 1972, when King made a threat that caused him to sever their relationship.[3]

---

[2]Mr. King was not called to testify during the State Bar proceedings.

[3]Petitioner testified: "Well, the initial threats I think related to his control over my professional life . . . then there was the threat that he was going to destroy my home and destroy my marriage . . . . Then there was, from time to time, there was this threat that he was going to be putting this fellow . , . who he referred to as his nigger slave, he would be putting him with me for a 24-hour period. But there was never any real, or objective

Elmer F. Galioni, a psychiatrist, who had examined petitioner for about two and one-half hours on February 10, 1975, testified on petitioner's behalf.[4] Petitioner was then 49 years of age. Dr. Galioni's evaluation of petitioner was that in 1971 and 1972 he was suffering from an emotional disorder of the characteristics of a manic-depressive psychosis that appeared to present itself primarily when he was under severe stress. Petitioner could function adequately under ordinary circumstances but his relationship with Mr. King impaired his judgment in his professional functions. During the period in question petitioner was able to distinguish right from wrong in connection with his actions, and he knew the nature and quality of his acts. During the latter part of his relationship with King, his reaction was of such a nature that following Mr. King's orders overrode his ability to conform his behavior to the requirements of the law. Petitioner's fear of Mr. King and his alleged threats led Dr. Galioni to conclude that "there was some paranoid type of thinking there."

Petitioner's mental and emotional strain is not a mitigating factor in this proceeding where the goal is the protection of the public, the courts and the legal profession. In *Grove* v. *State Bar* (1967) 66 Cal.2d 680, 685 [1b] [58 Cal.Rptr. 564, 427 P.2d 164], we said: ". . . we cannot find that the psychiatric report states any grounds for excusing him from observation of at least the minimum standards of professional conduct. We realize that in many cases psychoneurotic problems may underlie professional misconduct and moral turpitude. In this area our duty lies in the assurance that the public will be protected in the performance of the high duties of the attorney rather than in an analysis of the reasons for his delinquency. Our primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause, emotional or otherwise, for the attorney's failure to do so."

Although petitioner's asserted defenses may explain his actions, they neither justify them nor exonerate him from bearing the responsibility for his professional misconduct. (*In re Distefano* (1975) 13 Cal.3d 476, 481 [119 Cal.Rptr. 105, 531 P.2d 417].)

It is ordered that petitioner be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys. It is

external fact relating to this kind of a threat until December 29, and I think it was the 29th of 1971, '72."

[4] Dr. Galioni's examination was made for the State Bar. He had been furnished copies of the notice to show cause and petitioner's answer.

further ordered that petitioner comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.

Taylor, J.,* sitting in place of Richardson, J.

---

*Assigned by the Chairman of the Judicial Council.