In the Matter of Frank SWAN.

UNITED STATES of America, Plaintiff,

v.

WILLIAM W., et al., Defendants.

No. SA CR 92–53(A) AHS.

United States District Court,
C.D. California.

Sept. 13, 1993.

Paul Seave, Asst. U.S. Atty., Santa Ana, CA, for plaintiff.

Frank Swan, Escondido, CA, for defendants.

**MEMORANDUM OPINION ON ORDER SANCTIONING ATTORNEY FOR GENDER–BASED DISCRIMINATION**

STOTLER, District Judge.

## I.

### *INTRODUCTION*

On May 10, 1993, the government brought a Motion for a Penalty Pursuant to the Local Rules against attorney Frank Swan. The government seeks imposition of a monetary sanction and referral of this matter to the Standing Committee on Discipline for the United States District Court for the Central District of California. Mr. Swan filed opposition to the motion on May 21, 1993. The government filed its reply on May 28, 1993. After hearing the parties' oral arguments on June 7, 1993, the Court took the matter under submission.

In this opinion, the Court decides that, since attitudinal changes are difficult to enforce, the most fitting way to impress the wrong-thinking attorney in question is (1) to require an apology to the targeted attorney; (2) to refer the matter to the Court's Standing Committee on Discipline pursuant to Local Rule 2.6.3.1; and (3) to publish this Order.

## II.

### *FACTUAL BACKGROUND*

The present matter comes before the Court in the course of a criminal prosecution by the United States against three defendants for conspiracy, structuring financial transactions to evade currency reporting requirements, making and subscribing false tax returns, and assisting in the preparation of false tax returns. The United States is represented by Assistant United States Attorney E.A.[1] in the criminal prosecution.

On March 24, 1993, the government brought a motion to disqualify attorneys Frank Swan and Gerald W. from representing defendant Teri S. After considering the

---

1. Since the defendants are not involved in this proceeding, their names, as well as those of the prosecutor and of Mr. Swan's co-counsel, have been abbreviated.

papers filed in connection with the motion to disqualify, and after conducting a hearing where witnesses were sworn and testified, the Court granted the government's motion because of the serious potential for conflict engendered by the joint representation of multiple defendants under the circumstances of this prosecution. *See, e.g., United States v. Kenney,* 911 F.2d 315 (9th Cir.1990).

On April 9, 1993, defendant Teri S.— through her counsel Frank Swan and Gerald W.—brought a motion for reconsideration. The motion was denied by the Court on April 28, 1993. On April 20, 1993, the government brought a motion to disqualify attorneys Frank Swan and Gerald W. from representing defendants William W. and Beverly W. This motion, which was unopposed, was granted by the Court on April 28, 1993, for the reasons enumerated in the government's initial motion to disqualify.[2]

On May 3, 1993, Frank Swan sent a letter to Assistant United States Attorney E.A. at the Office of the United States Attorney in Santa Ana, California. The letter, in its entirety, states—"Dear E[.]: I have something here I think applies to you. Your disqualification of [W.] and me was neither just nor fair to the defendants. Surely it serves your interests because now it will be easy for you." The letter was written on the letterhead of Mr. Swan's law offices and was signed by Mr. Swan. Attached to the letter was a printed page stating in bold-type, capital letters:

**"MALE LAWYERS PLAY BY THE RULES, DISCOVER TRUTH AND RESTORE ORDER. FEMALE LAWYERS ARE OUTSIDE THE LAW, CLOUD TRUTH AND DESTROY ORDER."**

A photocopy of this attachment is included as Exhibit A to the Court's Order. Mr. Swan does not deny sending the letter or the attachment to the prosecutor. No other counsel of record participated in any fashion in the drafting or mailing of the letter to the Assistant United States Attorney.

---

**2.** As of the date of the government's first motion to disqualify, the First Superseding Information charging defendants William W. and Beverly W. had not been filed. The First Superseding Infor-

## III.

### THE PARTIES' CONTENTIONS

#### A. Moving Papers:

The government argues that a penalty should be imposed on Frank Swan for his offensive conduct, pursuant to Local Rules 2.5.1 and 2.5.2, as well as Cal.Bus. & Prof. Code § 6068(f). The government submits that Swan's behavior "impugns the integrity of the Court" and "interferes with the administration of justice" by subjecting government counsel to offensive remarks. Local Rule 2.5.2. Further, the government asserts that Mr. Swan's conduct violates the rule requiring attorneys "to abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he or she is charged." Cal.Bus. & Prof.Code § 6068(f). The government states that Mr. Swan's comments also imply that the Court lacks integrity; particularly, the government attacks the gender-biased remarks made by Mr. Swan. Finally, the government charges that Mr. Swan's conduct is offensive to the reputation of his former clients.

#### B. Mr. Swan's Opposition:

Mr. Swan first argues that the Court lacks jurisdiction to impose any penalty because he has never appeared before the Court. Mr. Swan submits that the two motions to disqualify were aimed erroneously at him, and that Gerald W. was the sole attorney.

Contending that his letter was merely private criticism of the Assistant United States Attorney, Mr. Swan next asserts that the government is seeking revenge for a prosecutor's hurt feelings. After attacking the prosecutor's professional behavior, Mr. Swan states that he copied the attachment from a recent issue of *California Lawyer* magazine discussing gender stereotypes. Mr. Swan submits that the prosecutor displayed the stereotypical characteristics of female lawyers and that she in fact "clouded truth" by

---

mation was filed on April 15, 1993; William W. and Beverly W. were arraigned on April 16, 1993.

misstating facts and "destroyed order" by dividing a united family.[3] Mr. Swan posits that his letter served the legitimate ends of informing government counsel that her reputation with him was not good and inspiring her to change her behavior and motivations as a prosecutor.

Further, Mr. Swan states that his statements do not interfere with the administration of justice and that the government has offered no proof that they do. Next, Mr. Swan states that he never impugned the Court's integrity, and that he respects the exercise of the Court's discretion in granting the motions to disqualify. As to the attachment, Mr. Swan asserts that his comparison of the prosecutor to that stereotype does not imply criticism of "all lawyers who have a nexus with that stereotype image," and that the government's charge against him deserves no attention.

Mr. Swan also contends that he did not violate the California Business and Professions Code, since offensive, private "lawyer-to-lawyer" talk is not prohibited by § 6068. Mr. Swan asserts that his comments are protected under the First Amendment, and that bringing disciplinary proceedings against him would chill speech and "be too high a price to pay for the fragile sensibilities of an offended lawyer." Mr. Swan reiterates that his private criticism of the government attorney actually promotes respect for the legal profession, and that it serves the ends of justice. Finally, Mr. Swan asserts that the government has submitted no evidence that his comments brought any dishonor or disrepute to his former clients.

### C. Reply:

The government contends that this Court does have jurisdiction to impose a penalty on Mr. Swan. Next, the government asserts that gender-biased conduct is in fact unprofessional, interferes with the administration of justice, and impugns the integrity of the Court. *See In re Plaza Hotel Corp.,* 111 B.R. 882 (Bankr.E.D.Cal.), *aff'd without op.,*

123 B.R. 466 (Bankr.9th Cir.1990); *Principe v. Assay Partners,* 154 Misc.2d 702, 586 N.Y.S.2d 182 (N.Y.Sup.Ct.1992). The government also argues that this principle is violated whether the conduct occurs inside or outside the courtroom. *Standing Committee on Discipline v. Ross,* 735 F.2d 1168 (9th Cir.1984).

Moreover, the government asserts that gender-biased remarks also constitute offensive personality, which are sanctionable under Cal.Bus. & Prof.Code § 6068(f). *See Snyder v. State Bar,* 18 Cal.3d 286, 133 Cal. Rptr. 864, 555 P.2d 1104 (1976).

As to Mr. Swan's First Amendment arguments, the government does not dispute Mr. Swan's right to criticize the government attorney, but argues that he has no constitutional right to use offensive, gender-biased comments in an effort to do so. The government submits that the Supreme Court has held that attorneys may be held to ethical precepts that prevent them from partaking in otherwise constitutionally protected speech. *See Gentile v. State Bar of Nevada,* 501 U.S. ——, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991).

## IV.

### DISCUSSION

#### A. Jurisdiction:

■ Pursuant to Local Rule 2.2.6, "any attorney who appears for any purpose submits to the discipline of this Court with respect to conduct of the litigation."

The Court plainly has disciplinary jurisdiction because Mr. Swan has "appeared" before the Court. First, the criminal minutes either refer to Mr. Swan as one of the attorneys or state that Gerald W. is appearing on his behalf. Second, the motions to disqualify, and even defense counsel's own motion for reconsideration, repeatedly and specifically referred to both Mr. Swan and Gerald W. as counsel for the defendants; none of the papers filed with the Court until the present

---

3. The defendants are related members of a family whose business practices were involved in the criminal prosecution and had been the subject of earlier Internal Revenue Service scrutiny during

which Mr. Swan acted as counsel for the three family members and others connected with the business.

opposition even hinted at the proposition that Mr. Swan was not one of the attorneys for the defendants. Third, after the government's two motions to disqualify, Mr. Swan signed substitution of attorney forms (as to defendants William W. and Beverly W.) that were filed with the Court. Fourth, Mr. Swan appeared at the April 5, 1993 hearing on the motion to disqualify,[4] sat at the counsel table during the entire proceeding, and spoke as to his involvement with defendants in both the civil and criminal proceedings, as well as his involvement with certain third-party witnesses.[5] Finally, during the entire course of the April 5, 1993, hearing, Mr. Swan *never* objected that he was not the defendants' counsel despite the fact that the Court, government counsel, co-counsel Gerald W., and defendant Teri S. all treated Mr. Swan as an attorney in the action.

Based on the foregoing, the Court clearly has disciplinary jurisdiction over Mr. Swan, since he is an attorney who has appeared before the Court "for any purpose" in the conduct of ongoing litigation.

### B.   Violation of Local and Ethical Rules:

■ Local Rule 2.5.2 provides that "no attorney shall engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein." In addition, Cal.Bus. & Prof.Code § 6068(f), which is incorporated by Local Rule 2.5.1., also requires an attorney "to abstain from all offensive personality." The attachment submitted with Mr. Swan's letter to government counsel, which states "MALE LAWYERS PLAY BY THE RULES, DISCOVER TRUTH AND RESTORE ORDER. FEMALE LAWYERS ARE OUTSIDE THE LAW, CLOUD TRUTH AND DESTROY ORDER," violates the Local Rules and the ethical standards of the legal profession.

"Gender-biased remarks are unworthy of counsel who appear in federal court, interfere with the orderly conduct of federal litigation in an atmosphere of equal justice, and are as sanctionable as the casting of racial or ethnic epithets and slurs among counsel." *In re Plaza Hotel Corp.,* 111 B.R. 882, 892 (Bankr. E.D.Cal.), *aff'd without op.,* 123 B.R. 466 (Bankr.9th Cir.1990). Mr. Swan's patently gender-biased attack on government counsel, which would not have been made but for the fact that counsel is female and which is noticeably more egregious than the cases cited by the government, "is inherently and palpably adverse to the goals of justice and the legal profession." *Principe v. Assay Partners,* 154 Misc.2d 702, 586 N.Y.S.2d 182 (Sup. Ct.N.Y.1992).

The condescending tenor of Mr. Swan's opposition to the motion for a penalty and the attempt to justify his action on the ground that government counsel simply "fits the stereotype" serve only to reinforce the palpable sexism and gender bias displayed by this attorney. Such gender-based attacks have no relevance to the competency of counsel or the legitimate criticism of another attorney's performance. These remarks cannot go unsanctioned because courts of the

---

4.  At the commencement of the hearing, Gerald W. stated that he and Frank Swan were appearing on behalf of the defendants.

At one point during the hearing, the Court inquired: "Are you appearing in court today as counsel? I understood [Gerald W.] *was going to* appear and I can see why. Are you appearing today?" Mr. Swan responded, "In light of those comments, your Honor, no."

The Court then continued: "I took it to be that you were unavailable or otherwise indisposed and I took it as such." The Court's comments were directed not at Mr. Swan's status as an attorney *for defendants in the criminal action,* but rather toward information that had been supplied to the Court regarding Mr. Swan's indicated absence from the hearing and, more particularly, at Mr. Swan's inappropriate attire in the courtroom.

5.  Mr. Swan has argued that he appeared at the hearing merely as a witness. At the hearing, three witnesses—William W., Beverly W., and an individual the government expects to call as a witness in the criminal prosecution—were sworn in and gave testimony as witnesses regarding the potential for conflict in this case and/or waiver of Sixth Amendment rights.

Despite the fact that Mr. Swan spoke extensively about his involvement with defendants and the third-party witness, he never requested to be sworn in as a witness and was never actually sworn by the Court. Thus, it is clear that the Court treated and received Mr. Swan's statement as one given by an officer of the court, counsel for defendants, rather than as one of a witness.

United States are premised on the equality of all who appear before them, are dedicated to the neutral search for justice, and rely on the integrity and professionalism of all judicial officers in performing the varied functions of the judicial system.

The Court also rejects the intimation that the government has brought this motion on behalf of an attorney with wounded sensibilities who cannot handle the rigors of litigation. The "motive" offered by Mr. Swan contains yet another, albeit slightly more veiled, gender-biased stereotype levied at the Assistant United States Attorney. In fact, and as many a defense attorney will attest, the target of this offensive message is as sturdy as any prosecutor to come before the Court.

To the contrary, the Court finds the motion indicative "of a commitment to basic concepts of justice and respect for the mores of the profession of law." *Id.* The government's motion has simply brought to the Court's attention an unprofessional act, which, whatever the current reality and shortcomings of the practice of law and society at large, will not be tolerated in the environs of this Court.

■ Mr. Swan's repeated assertion that his conduct is unsanctionable because it occurred in the context of a "private" letter lacks merit. Local Rule 2.2.6 vests the Court with disciplinary jurisdiction over attorneys "with respect to conduct of the litigation." *See In re Plaza,* 111 B.R. at 892 (letters indicative of gender bias supported sanctions). The letter and attachment were both sent to the Assistant United States Attorney during the course of an ongoing criminal prosecution, and thus occurred during the conduct of the litigation. The fact that the letter was sent to government counsel at her office rather than stated in open court in no way reduces the sanctionability of the conduct or lessens the gender-biased attack's impact on the integrity of the Court or the administration of justice. *See, e.g., Standing Committee on Discipline v. Ross,* 735 F.2d 1168 (9th Cir.1984) (letters to other attorneys with threats of harm are sanctionable conduct).

The Court finds additional guidance in the recently published Final Report of the Ninth Circuit Gender Bias Task Force, entitled *The Effects of Gender in the Federal Courts.* The task force's recommendation regarding the adoption of specific disciplinary rules applicable "not only in the courtroom itself but also during the pre-trial or post-trial process, and in any alternative dispute resolution programs sponsored by the court," *see* Report, pp. 226–227, comports with, and buttresses, the conclusion that Mr. Swan's conduct is indeed sanctionable.

■ In sum, the Court finds that Mr. Swan's gender-biased remarks impugn the integrity of the Court and judicial system and interfere with the administration of justice just as would written or verbal assaults based on race, color, national origin, religion, physical disability, age, or sexual orientation. This motion is not a mere exercise in political rectitude. It deals with a problem sadly common in American society today—no respect for the individual and a wrong-thinking approach to humankind. Mr. Swan's conduct is a clear violation of the Local Rules and the State Bar rules, as well as violative of the principles and standards inherent in the legal profession.[6]

## C. First Amendment:

■ Imposition of a penalty for Mr. Swan's gender-biased remarks does not violate his First Amendment rights. *See Gentile v. State Bar of Nevada,* 501 U.S. ——,

---

6. The Court agrees that Mr. Swan's derogatory, gender-biased comments also constitute "offensive personality" within the meaning of Cal.Bus. & Prof.Code § 6068(f) for the reasons discussed above. *See Snyder v. State Bar,* 18 Cal.3d 286, 133 Cal.Rptr. 864, 555 P.2d 1104 (1976) (preparation of declaration including offensive description of opposing party and counsel supported sanction); *Standing Committee on Discipline v. Ross,* 735 F.2d 1168 (9th Cir.1984) (letters to other attorneys with threats of harm are sanctionable conduct).

Notwithstanding Mr. Swan's reference to "Attorney Discipline for 'Offensive Personality' in California," Hastings Law Journal, Vol. 31, p. 1097 (1980), discussing the constitutionality of § 6068(f), the Court bases its decision to impose a penalty on the Local Rules and the Court's inherent power, along with this section of California's State Bar Act.

———, 111 S.Ct. 2720, 2743–44, 115 L.Ed.2d 888, 922–23 (1991) (finding "the speech of *those participating before the courts* could be limited" (emphasis in original) and "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for the regulation of the press" and other strangers to the litigation); *Ramirez v. State Bar*, 28 Cal.3d 402, 411, 169 Cal.Rptr. 206, 619 P.2d 399 (1980) (rejecting "the argument that 'outrageous' and 'unwarranted' statements concerning a justice ... were protected by 'free speech' considerations"); *In re Sawyer*, 360 U.S. 622, 646–67, 79 S.Ct. 1376, 1388–89, 3 L.Ed.2d 1473 (1959) (Stewart, J., concurring) (no possible "intimation that a lawyer can invoke the constitutional right of free speech to immunize himself from evenhanded discipline for proven unethical conduct" and "obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech").

We are fully cognizant that attorneys criticize other attorneys, that attorneys criticize the courts and the decisions they render, and that judges often criticize attorneys. In fact, some individuals simply do not **like** other individuals. Mr. Swan's letter, standing alone, constitutes legitimate criticism within the broad boundaries of professional conduct. Indeed, such criticism may serve valuable functions in the development of the law and/or the development of an individual attorney's career or knowledge of the law.

However, gender-biased attacks launched against an officer of the court by another officer of the court have no place in professional criticism or discourse among attorneys admitted to practice before the Court. The remarks made by Mr. Swan by way of the attachment to his letter have no colorable interpretation other than a gender-biased invective against government counsel; the attachment therefore runs counter to the Court's compelling interests in maintaining the integrity of the judicial system and in promoting the fair and impartial administration of justice.

While lamentable, Mr. Swan's apparent inability to comprehend the nature of his actions or to distinguish between the letter he mailed and the attachment thereto does not minimize the sanctionability of his conduct. Mr. Swan indicated to the Court that he is approaching retirement and that he does not wish to retire with any smear on his otherwise clean record with the State Bar of California. The Court would only wish that Mr. Swan had not sent his offensive letter, that he could yet see the offensive personality displayed by his conduct, and that he would refigure his professional outlook to consider his adversaries another way, namely, with respect.

## V.

### CONCLUSION

Given the difficulty in causing these wishes to come true, the Court concludes that imposition of sanctions against Mr. Swan is justified. Taking the specific features of this motion and Mr. Swan's arguments and situation into account, the Court grants the government's motion to refer this matter to the Standing Committee on Discipline. Whether and to what extent a monetary sanction should be imposed can be decided by that body.

Specifically, the Court orders:

1. Mr. Swan is ordered to write forthwith an apology to the Assistant United States Attorney to whom he wrote his letter of May 3, 1993;

2. Mr. Swan is ordered to present proof to the Court on or before October 1, 1993, that he has written an apology to the Assistant United States Attorney;

3. Pursuant to Local Rule 2.6.3, this matter is referred to the Standing Committee on Discipline for action the Standing Committee on Discipline may consider appropriate;

4. This Opinion on Order shall be published.

The Court adopts as its findings of fact the proposed Order lodged by the government, as modified by the Court.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on all counsel of record and transmit a copy to the Chair of the Standing Committee on Discipline.

## APPENDIX A

# MALE LAWYERS PLAY BY THE RULES, DISCOVER TRUTH AND RESTORE ORDER. FEMALE LAWYERS ARE OUTSIDE THE LAW, CLOUD TRUTH AND DESTROY ORDER.