**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William WUNSCH; Beverly Wunsch;**
**Teri Lee Sowers, Defendants,**

**and**

**Frank L. Swan, Respondent–Appellant.**

**No. 93–50671.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 1994.

Decided April 28, 1995.

Carol A. Sobel, ACLU Foundation of Southern California, Los Angeles, CA, for respondent-appellant.

Paul L. Seave, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellee.

Lynn Hecht Schafran, NOW Legal Defense and Educ. Fund, New York City, for the amici curiae.

Roberta M. Ikemi, California Women's Law Center,·Los Angeles, CA, for the amici curiae.

Before: BROWNING, FARRIS, and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

In this case we are called upon to determine whether a male attorney was properly sanctioned by the district court for displaying gender bias in a letter sent to a female attorney following the male attorney's disqualification from the underlying action. We reverse.

## FACTS [1] AND PRIOR PROCEEDINGS

This matter arose during the course of a criminal tax prosecution brought by the United States against three defendants, William and Beverly Wunsch and their daughter, Teri Sowers.[2] Shortly after Sowers's arrest by federal agents on March 18, 1993, Frank Swan telephoned Assistant United States Attorney Elana Artson, counsel for the United States. Swan, who identified himself as counsel for Sowers, asked about the charges pending against his client and the conditions for her release. Swan also told Artson that he would be unable to attend Sowers's bail hearing that afternoon, but would send another attorney, Gerald Wilson, in his stead.

On March 24, 1993, Artson moved to disqualify Swan and co-counsel Wilson, arguing that their representation of both Sowers and the Wunsches (who were at that time targets of a grand jury investigation and likely defendants in an anticipated superseding indictment) amounted to a conflict of interest. In a memorandum in opposition filed five days later, Sowers argued that, because Swan had represented her and her parents since November 1990 in connection with the Internal Revenue Service civil audit, summons enforcement hearings, and subsequent criminal investigation, disqualifying Swan would adversely affect Sowers's ability to present an effective defense. Sowers also declared that she and her parents were prepared to waive any conflict.

On March 29, 1993, Artson filed a supplement to the government's original motion, noting as a further ground for disqualification that Swan had previously represented two accountants during the course of the Wunsch/Sowers criminal investigation, and that the government intended to call these accountants as witnesses during the prosecution's case-in-chief.

On April 5, 1993, the district court conducted a hearing on the government's disqualification motion. Both Swan and Wilson appeared and argued against the motion, and the Wunsches, Sowers, and one of the prospective government witnesses testified. The district court granted the motion at the conclusion of the hearing, finding that a serious potential for conflict of interest existed because of Swan's joint representation of Sowers and the Wunsches, as well as his prior representation of the two accountants whom the government intended to call. Sowers filed a motion for reconsideration four days later.

The following week (i.e., April 15, 1993), a federal grand jury handed down a 14-count superseding indictment containing additional charges against Sowers as well as new charges against the Wunsches. On April 20, 1993, Artson filed a motion to disqualify Swan and Wilson from representing the Wunsches. No opposition to this motion was filed, and on April 28, 1993, the district court granted the motion to disqualify and denied the motion to reconsider.

On May 6, 1993, Artson received a letter from Swan. The letter was dated May 3, 1993, and read as follows:

Dear Elana:

I have something here that I think applies to you.

Your disqualification of Wilson and me was neither just nor fair to the defendants. Surely, it serves your interests because now it will be easy for you.

Very truly yours,

/s/ Frank Swan
FRANK L. SWAN, INC.

Appended to the letter was a single sheet of paper with the following photocopied words, all enlarged and in capital letters:

MALE LAWYERS PLAY BY THE RULES, DISCOVER TRUTH AND RESTORE ORDER. FEMALE LAWYERS

---

1. The underlying facts are not in dispute and were summarized by the district court in its published Memorandum Opinion on Order Sanctioning Attorney for Gender–Based Discrimination. *See Matter of Swan*, 833 F.Supp. 794, 795–96 (C.D.Cal.1993).

2. Although Sowers's first name appears throughout the pleadings and related materials as "Teri," the reporter's transcript of the hearing held on April 5, 1993, indicates that Sowers's first name is probably spelled "Terri."

ARE OUTSIDE THE LAW, CLOUD TRUTH AND DESTROY ORDER.[3]

On May 10, 1993, Assistant United States Attorney Paul Seave filed a motion on behalf of the government, asking the court to impose a penalty against Swan for having violated Rules 2.5.1[4] and 2.5.2[5] of the Local Civil Rules of Practice for the United States District Court, Central District of California ("Local Civil Rules" or "Rules"). In his opposition filed May 21, 1993, Swan argued, *inter alia*, that the court lacked disciplinary authority over him because he had never appeared in the criminal case and his conduct was not sufficiently connected to the litigation before the court; his comments were protected speech under the First Amendment, and did not run afoul of the Local Civil Rules; and he should not be sanctioned for having criticized another attorney in a private communication. The government filed its reply on May 28, 1993. Following oral argument on June 7, 1993, the court took the matter under advisement.

On September 13, 1993, the district court filed its Memorandum Opinion on Order Sanctioning Attorney for Gender–Based Discrimination. *See Matter of Swan*, 833 F.Supp. 794 (C.D.Cal.1993). In its opinion the court held that Swan's conduct in sending the letter with its attachment to Artson violated several local rules and warranted the imposition of sanctions. 833 F.Supp. at 798–99 & n. 6. The court ordered Swan to send a letter of apology to Artson, and referred the matter to the Central District's Standing Committee on Discipline for any action it might deem appropriate. *Id.* at 800. Swan has timely appealed, arguing that the district court lacked jurisdiction to sanction him, and the court's authority relied upon for imposing the sanction was unconstitutional.

## ANALYSIS

### Standard of Review

With respect to a district court's decision to impose sanctions against an attorney, "This court reviews findings of historical fact under the clearly erroneous standard, the determination that counsel violated [the Local Civil Rules] under a de novo standard, and the choice of sanction under an abuse of discretion standard." *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir.1994) (per curiam) (citations omitted). In all such cases, "Legal and constitutional questions are reviewed *de novo*. In cases ... raising First Amendment issues, an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *United States Dist. Court for the E. Dist. of Wash. v. Sandlin*, 12 F.3d 861, 865 (9th Cir.1993) (internal quotations and citations omitted).

### Discussion

The district court cited as authority for its disciplinary action Local Civil Rules 2.2.6,[6] 2.5.1, and 2.5.2, section 6068(f)[7] of California's Business and Professions Code, "and the Court's inherent power[.]" *Matter of Swan*, 833 F.Supp. at 799 n. 6. Swan challenges each of these grounds on appeal.

▮ With respect to the last ground, *viz.*, the court's inherent power, we note that

---

3. Swan apparently copied the attachment from an article entitled "No Way to Treat a Lawyer," found in the December 1992 issue of the California State Bar's magazine, *California Lawyer*. The article discussed negative gender stereotyping of female attorneys in movies and television.

4. That Rule reads, in relevant part: *"Rules of Professional Conduct of the State Bar of California—State Bar Act.* Each attorney shall ... comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act[.] ... Those statutes, rules and decisions are hereby adopted as the standards of professional conduct of this Court."

5. That Rule reads in its entirety: *"Other Standards.* No attorney shall engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein."

6. That Rule reads in its entirety: *"Jurisdiction of Court.* Any attorney who appears for any purpose submits to the discipline of this Court with respect to conduct of the litigation."

7. Section 6068(f) of California's Business and Professions Code reads, in relevant part: "It is the duty of an attorney ... [t]o abstain from all offensive personality[.]"

an attorney admitted to a particular bar may be disciplined for conduct that violates that bar's local rules of professional conduct. *See Standing Comm. on Discipline of the United States Dist. Court for the S. Dist. of Cal. v. Ross,* 735 F.2d 1168, 1170 (9th Cir.), *appeal dism'd & cert. denied sub nom. Frontier Properties v. Elliott,* 469 U.S. 1081, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984). This power to discipline is not limited to conduct that occurs within the course of litigation. *See Western Sys., Inc. v. Ulloa,* 958 F.2d 864, 873 (9th Cir.1992) (as amended), *cert. denied,* —— U.S. ——, 113 S.Ct. 970, 122 L.Ed.2d 125 (1993). As the district court had the requisite jurisdiction to discipline Swan for violations of its rules, the questions before us are whether the district court had the authority under its local rules to discipline Swan and, if so, whether Swan's conduct amounted to a violation of one or more of the Local Civil Rules cited to and relied upon by the district court. Each of these issues will be examined in turn.

### I. Local Civil Rule 2.2.6

Swan first argues that his removal from the case also removed him from the reach of Local Civil Rule 2.2.6, the basis upon which the district court relied in asserting disciplinary authority. *See Matter of Swan,* 833 F.Supp. at 797. The government contends (and the district court implicitly held) that, pursuant to Rule 2.2.6, once Swan had appeared in the underlying criminal proceeding he remained within the reach of the court's disciplinary authority for as long as the litigation continued, regardless of his disqualification.[8]

Rule 2.2.6 provides that "Any attorney *who appears* for any purpose submits to the discipline of this Court *with respect to conduct of the litigation*" (emphasis added). It is clear from this language that, for purposes of Rule 2.2.6, an attorney becomes subject to the disciplinary authority of the district court only when two conditions are met: First, the attorney must actually appear before the court;[9] and second, the behavior for which he is disciplined must have some nexus with the conduct of the litigation before the court.

### A. Appearance

■ Swan argued before the district court, and continues to assert on appeal, that, as he never formally entered an appearance on behalf of either Sowers or the Wunsches in the underlying criminal proceeding, he never "appeared" before the district court. This contention finds no support in the record.

Among other things, the materials before us show that (1) Swan identified himself as Sowers's attorney in his initial telephone contact with Artson on March 18, 1993; (2) in the Designation and Appearance of Counsel form filed later that same day, both Sowers and Wilson identified Swan as one of Sowers's attorneys; (3) the clerk's criminal minutes for Sowers's arraignment identified both Swan and Wilson as defense counsel, and further noted that Wilson was appearing for Swan; (4) Defendant's Opposition to Motion to Disqualify Defense Counsel, filed March 29, 1993, identified both Swan and Wilson as

---

8. The government also contends that Swan's argument that the district court lost its authority over him following his disqualification was waived on appeal by virtue of Swan's failure to present it to the district court. Regardless of whether or not the issue turns on a question of personal or subject matter jurisdiction (and therefore is either waivable or not, *see* Fed. R.Civ.P. 12(h)(1), (3)), we note that the matter involves a question of law in which the facts are not in dispute. Accordingly, we elect to reach the merits of Swan's argument. *See New Hampshire Ins. Co. v. Vieira,* 930 F.2d 696, 702 (9th Cir.1991).

9. Pursuant to the Local Civil Rules, an attorney cannot appear before the district court unless he or she is first "admitted to the Bar of or permit-

ted to practice before this Court." Local Civil Rule 2.1. The nature of this "admission or permission" rule is laid out in Local Civil Rule 2.2. Admission to the Central District Bar requires that the attorney be a person of good moral character who is an active member of, and in good standing with, the State Bar of California. Local Civil Rule 2.2.1. An attorney not otherwise eligible for admission to the Central District Bar may nonetheless be granted permission to practice before the district court, either on a *pro hac vice* basis or for the limited purpose of representing the United States or its agencies, provided certain conditions not here relevant are first met. *See* Local Civil Rule 2.2.3 (Pro Hac Vice Appearance); Local Civil Rule 2.2.4 (Attorneys for the United States).

defense counsel; (5) Swan appeared with Wilson at counsel table during the April 5, 1993 hearing, where he was not sworn as a witness, but argued against his own disqualification; (6) Swan, not Wilson, signed the substitution of attorney forms as to both William and Beverly Wunsch; (7) Swan's own letter to Artson expressly referred to "[y]our disqualification of Wilson *and me* . . ." (emphasis added); and (8) Swan never objected to his being listed as Sowers's attorney in any of the aforementioned documents.

Swan's every action was consistent with his being exactly what he appeared, and everyone else took him to be, *viz.*, counsel for the accused. Moreover, Swan could have resolved any doubts concerning his status—and thereby rendered moot the government's efforts to have him disqualified—by the simple expedient of telling the court that he was not one of the defense attorneys for either Sowers or the Wunsches. Finally, it is disingenuous for Swan to argue that he had no connection with a case in which he fought so hard against his own disqualification. Accordingly, we find no error in the district court's ruling that Swan had "appeared" before the court during the course of the ongoing litigation. *See Matter of Swan,* 833 F.Supp. at 798.

### B. Nexus

◼ Furthermore, we cannot say that the district court abused its discretion by concluding that Swan's conduct had the requisite nexus with the conduct of the litigation before the court. *See Professional Programs Group v. Department of Commerce,* 29 F.3d 1349, 1353 (9th Cir.1994) (district court decision based on local rule reviewed for abuse of discretion). The government's motion to disqualify Swan was litigated during the ongoing tax prosecution. Swan's communication to Artson was a direct and immediate response to the district court's decision to grant the government's motion to bar Swan from participating further in the litigation. The subject matter of the communication was

Swan's perception of Artson's conduct during that litigation. To shield Swan from potential discipline the moment he was disqualified would immunize conduct that was inextricably connected with the ongoing prosecution. In light of the great deference we must accord the district court's interpretation of its own local rules, *see Guam Sasaki Corp. v. Diana's Inc.,* 881 F.2d 713, 715 (9th Cir. 1989), we conclude that there was a sufficient nexus between Swan's communication and the ongoing criminal prosecution to support the court's disciplinary authority under Local Rule 2.2.6.

### II. Local Civil Rule 2.5.2

As already noted, one of the bases upon which the district court justified its imposition of sanctions was Local Civil Rule 2.5.2, which provides that "[n]o attorney shall engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein." *See Matter of Swan,* 833 F.Supp. at 798–99. Swan argues that, as his conduct neither impugned the integrity of the court nor interfered with the administration of justice, he should not have been sanctioned for violating Rule 2.5.2.[10] We discuss each half of this contention in turn.

### A. Impugning the Integrity of the Court

◼ We begin by noting that, "[O]nce a lawyer is admitted to the bar, although he does not surrender his freedom of expression, he must temper his criticisms in accordance with professional standards of conduct." *Sandlin,* 12 F.3d at 866. When levelled against a court, such criticisms must be viewed objectively rather than in the subjective context of what the critic allegedly intended. *Id.* at 867 (construing Washington local court rule in conjunction with Rule of Professional Conduct involving claim that lawyer defamed trial judge).

◼ Under an objective reading of the letter and attachment, we cannot say that the

---

**10.** The argument as framed is implied in Swan's contention that, as applied to the facts of his case, Local Civil Rule 2.5.2 amounts to a violation of his First Amendment rights. Because resolution of the constitutional question is unnec-

essary to the disposition of this issue, we have no need to discuss the merits of Swan's constitutional question. *See In re Snyder,* 472 U.S. 634, 642–43, 105 S.Ct. 2874, 2879–80, 86 L.Ed.2d 504 (1985).

communication impugns the integrity of the court. Significantly, no reference to any court, judge, or judicial officer appears or is even hinted at in the letter or attachment. Swan's criticism "cannot be equated with an attack on the motivation or the integrity or the competence of the judge[ ]." *In re Sawyer*, 360 U.S. 622, 632, 79 S.Ct. 1376, 1381, 3 L.Ed.2d 1473 (1959). In addition, although the attachment impugns "female lawyers" and reveals a patently sexist attitude on the part of Swan, the cover letter indicates that Swan's criticism is directed primarily at Artson. "[A] lawyer may criticize ... the prosecution, even to the extent of suggesting wrongdoing · ... without by that token impugning the judiciary." *Id.*

### B. Interference with the Administration of Justice

■ The district court cited to two published decisions in support of its conclusion that Swan's sexist communication, standing alone, amounted to an interference with the administration of justice under Local Civil Rule 2.5.2. *See Matter of Swan*, 833 F.Supp. at 798 (citing *In re Plaza Hotel Corp.*, 111 B.R. 882 (Bankr.E.D.Cal.), *aff'd without op.*, 123 B.R. 466 (9th Cir. BAP 1990); *Principe v. Assay Partners*, 586 N.Y.S.2d 182, 154 Misc.2d 702 (N.Y.Sup.Ct.1992)). Neither of these decisions supports the district court's conclusion.

In *In re Plaza Hotel Corp.*, the bankruptcy court disqualified a male attorney serving as debtor's counsel, noting that it was greatly concerned about "the gender bias that counsel has exhibited toward the women who represent the chapter 11 trustee and the United States Trustee[.]" 111 B.R. at 891–92. However, the bankruptcy court's criticism of debtor's counsel was based on more than a display of gender bias: Debtor's counsel had refused to assist the debtor in meeting its obligation to cooperate with the Chapter 11 trustee; he made slighting oral and written references during the proceedings to the designee (i.e., the woman representing the United States Trustee) as "office help," even though he was aware that she was a lawyer; and he refused to respond to the designee's written request for full disclosure on a question of conflict of interest. *Id.*

Similarly, in *Principe*, the court sanctioned an attorney for unprofessional conduct in the litigation process, based on a series of demeaning remarks directed against a female attorney at deposition. 586 N.Y.S.2d at 184, 154 Misc.2d at 704. The remarks, which included references to the female lawyer as "little lady," "little mouse," "young girl," and "little girl," were accompanied by rude hand gestures and had been made in front of other counsel, the witness, and a court reporter. *Id.* The court concluded that sanctions were appropriate because the attorney's conduct had amounted to an egregious failure to conform to accepted notions, including a recent amendment to a Disciplinary Rule of New York's Code of Professional Responsibility. 586 N.Y.S.2d at 185, 154 Misc.2d at 704–05.

In both cases the courts imposed sanctions based on facts showing that each attorney's sexist behavior was not only deplorable, but part of a pattern of misconduct that amounted to an interference with the administration of justice. In the instant case, however, we have a single incident involving one isolated expression of a private bias with no facts that would show how that single communication adversely affected the administration of justice, either in this or in any other case. *Cf. Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075, 111 S.Ct. 2720, 2745, 115 L.Ed.2d 888 (1991) (part II of majority opinion; Rehnquist, C.J.) (in order to satisfy the First Amendment, there must be facts showing a "substantial likelihood of material prejudice" to an adjudicative proceeding before a lawyer may be disciplined for his extrajudicial comments).

In the absence either of a showing that Swan's communication impugned the integrity of the court, or of any facts showing how that communication adversely affected the administration of justice in this, or in any other legal proceeding, we must vacate that portion of the district court's decision which finds a violation of Local Civil Rule 2.5.2.

### III. Local Civil Rule 2.5.1

The bulk of Swan's argument on appeal involves a challenge to the constitutionality of

section 6068(f) of California's Business and Professions Code, both in general, *i.e.*, on grounds of vagueness and overbreadth, and specifically as applied to him. The government, however, effectively ignored this contention, arguing instead that, because the district court's imposition of sanctions could be upheld on an alternative, nonconstitutional basis, *viz.*, Local Civil Rule 2.5.2, it was unnecessary to reach the merits of Swan's constitutionality argument. Because of our conclusion that the district court's imposition of sanctions cannot be upheld under Rule 2.5.2, and owing to the fact that the sanctions rested in part on Rule 2.5.1, which incorporates section 6068(f), *see Matter of Swan*, 833 F.Supp. at 799 & n. 6, we turn to the merits of Swan's argument that Cal.Bus. & Prof. Code § 6068(f) is unconstitutional. *See Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 2996–97, 86 L.Ed.2d 664 (1985) (" 'Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.' ") (citations omitted). For the reasons which follow, we conclude that Cal.Bus. & Prof.Code § 6068(f), as incorporated by Local Civil Rule 2.5.1, is unconstitutionally vague.[11]

 A statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited. When the statute has a potentially inhibiting effect on speech, this standard is more strictly applied. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). The Fifth Amendment due process clause requires a statute to be sufficiently clear so as not to cause persons "of common intelligence ... necessarily [to] guess at its meaning and [to] differ as to its application[.]" *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Laws that are insufficiently clear are void for three reasons: (1) To avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on arbitrary or discriminatory interpretations by government officers; and (3) to avoid any chilling effect on the exercise

of First Amendment freedoms. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

 Clearly, "offensive personality" is an unconstitutionally vague term in the context of this statute. *See, e.g., Cohen v. California*, 403 U.S. 15, 25, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971) ("disturb[ing] the peace ... by ... offensive conduct" fails to give sufficient notice of what was prohibited). As "offensive personality" could refer to any number of behaviors that many attorneys regularly engage in during the course of their zealous representation of their clients' interests, it would be impossible to know when such behavior would be offensive enough to invoke the statute. For the same reason, the statute is "so imprecise that discriminatory enforcement is a real possibility[,]" *Gentile*, 501 U.S. at 1051, 111 S.Ct. at 2732 (Kennedy, J., minority opinion), and is likely to have the effect of chilling some speech that is constitutionally protected, for fear of violating the statute.

In light of the fact that Cal.Bus. & Prof. Code § 6068(f)'s provision regarding "offensive personality" is unconstitutionally vague, its incorporation by Local Civil Rule 2.5.1 requires us to set aside that portion of the district court's holding in reliance thereon.

## CONCLUSION

The question before us is not whether Swan displayed a deplorable lack of sensitivity, but whether the district court's decision to impose sanctions on Swan, in addition to whatever sanction(s) the Central District's Standing Committee on Discipline may choose to impose, can be upheld as a matter of law based on the authorities cited. For the reasons set forth above, we conclude that it cannot.

The district court's judgment imposing sanctions against Swan under Local Civil Rules 2.5.1 and 2.5.2 is REVERSED. Each side will bear its own costs on appeal.

---

11. Because we conclude § 6068(f) is unconstitutionally vague, we do not reach Swan's argument

that the statute is also unconstitutionally overbroad.