[Crim. No. 13836. Fourth Dist., Div. One. July 15, 1982.]

MICHAEL B. LLOYD, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent.

897

COUNSEL

Swarner, Finn & Barnett and Dennis M. Finn for Petitioner.

Daniel B. Hunter, Paul E. Bell, Thompson & Colegate, James D. Ward and Sharon J. Waters as Amici Curiae on behalf of Petitioner.

Donald L. Clark, County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Nathan C. Northup, Deputy County Counsel, for Respondent.

## OPINION

**BROWN (Gerald), P. J.**—Michael B. Lloyd, an attorney, defended one of a trio of defendants in a death penalty case which was transferred from Riverside County to San Diego County. During the trial, counsel for another of the defendants was cited for contempt. On December 4, 1981, after a hearing, counsel was found in contempt and sentenced to five days in jail with a $500 fine. Lloyd was not present at the hearing.

On December 10, 1981, the following letter signed by Michael B. Lloyd appeared in the Riverside [CA] Morning Press-Enterprise:

"Editor, the Press-Enterprise: . . . On December 1, 1981, the San Diego Superior Court terminated the Fourth and Fourteenth Amendments to the United States Constitution. On that black Friday the Founding Fathers cried. On that day the prejudice that the Constitution battles against stole the treasure of the land. The wealth that was taken, so notoriously, so casually, is known to us all as 'due process of law.'

"On that infamous day, an attorney stood before the bench in San Diego Superior Court, charged with the crime of contempt of court—it probably would be better described to the layperson as a violation of an order by a judge. This attorney stood before a judge and asked to have the opportunity to put on a defense to this crime. He was denied.

"The judge then sentenced this man to five days in jail and a $500 fine, stating that 'it's difficult to conceive of any action by an attorney that is more contemptuous.' I cannot think of any action by the government more contemptuous than denying due process of law. This sort of prejudice isn't just a closed mind by a particular judge; it's an open wound on the body of all of us.

"To be sure, my opinion of the actions of this attorney are not reflected in this letter, and should not be taken as justification or recrimination. The real issue can be succinctly phrased in that well-used aphorism: 'To be tolerant of prejudice is to be part of it.' None of us can afford to be tolerant of the actions of any governmental employee who abuses the legal system.

"Of course each person must decide for himself how to react to the actions of the judiciary in San Diego and how to change it. Some might decide that living in such a country without due process of law is intolerable. Some may change it, some may leave.

"For those of you who would leave San Diego for Riverside: you need no key to the city; all doors are open to you, all hands are outstretched in welcoming greeting, all hearts the happier that you have come to our community. For you see, us Riversiders, with all our smog, all our cowboy boots, and all our small town ways, keep the bounty of due process of law closest to our hearts."

An order to show cause re contempt was issued to Lloyd. When the matter was heard, stipulations were entered in the record as follows: the letter did not name the judge or the lawyer in contempt; Lloyd did not identify himself as an attorney for one of the codefendants; the first contempt matter was not pending in superior court at the time the letter appeared; the Riverside paper has no direct circulation or sales in San Diego County; there were no disturbances or physical interference in the courts as a result of the letter; the only reaction in the courts was the issuance of the order to show cause and responses to it. The superior court, *sua sponte*, judicially noticed the proceedings giving rise to the first contempt citation and the hearing on December 4. It concluded Lloyd's letter was false and malicious, showed disrespect to the judiciary and was an act of offensive personality against the court. Lloyd was fined $500.

■ ■■■ Lloyd petitioned this court for a writ of habeas corpus[1] and for a stay of the fine.

■ A court has the inherent power to make sure judicial proceedings are conducted in a manner consistent with the orderly administra-

---

[1]A writ of habeas corpus is not appropriate when the petitioner is not illegally confined. We have considered the petition as a writ of review (*Grant v. Superior Court* (1963) 214 Cal.App.2d 15 [29 Cal.Rptr. 125]).

tion of justice and to punish those who show disrespect or disrupt the proceedings (*Raskin* v. *Superior Court* (1934) 138 Cal.App. 668, 669-670 [33 P.2d 35]). The Legislature has codified this principle by granting power to every court to provide for the orderly conduct of proceedings (Code Civ. Proc., § 128) and by setting out various acts and omissions which constitute contempt (Code Civ. Proc., §§ 1209-1222; Pen. Code, § 166; *Bridges* v. *Superior Court* (1939) 14 Cal.2d 464, 474 [94 P.2d 983]). Case law defines contempt as "an act . . . committed in or out of [the court's] presence—[that] tends to impeach, embarrass or obstruct the court in the discharge of its duties." (*In re Shortridge* (1893) 99 Cal. 526, 532 [34 P. 227].)

█ Lloyd's alleged contempt arises from the publication of a letter to the editor and, thus, is asserted as an indirect or constructive contempt committed outside the presence of the court. He argues his act is protected by the principles of free speech. County counsel says the only difference between direct and indirect contempt is the punishment (Code Civ. Proc., § 1211 et seq.). However, "[*u*]*nlike a newspaper*, a courtroom is not a proper forum for free-wheeling exchange of ideas. An attorney's freedom of speech in this setting must be tempered to insure that courts of law accomplish that for which they were created—dispensing justice in a reasonable, efficient and fair manner." (*In re Buckley* (1973) 10 Cal.3d 237, 254, fn. 22 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248], italics ours.) Although there may be times when acts or omission are contemptuous whether in or out of the court, the situation described here is not one of them. Petitioner is an attorney but he was not a party, witness or counsel in the matter he was discussing; in signing the letter he did not identify himself as an attorney, which suggests he was writing in his private capacity as a concerned citizen; the matter about which Lloyd wrote was no longer pending in the superior court at the time the letter was written; the letter did not name the attorney or the judge involved in the proceedings Lloyd was criticizing. If his action was contemptuous, it should not be judged by the same standards as direct contempt.

In considering the question of newspaper articles critical of the judiciary, case law has recognized the delicate balance between freedom of speech and the administration of justice. In *Bridges* v. *California* (1941) 314 U.S. 252 [86 L.Ed. 192, 62 S.Ct. 190, 159 A.L.R. 1346], the contempt convictions were based on comments about *pending* litigation which appeared in the press. Recognizing the court's power to find people in contempt, the court pronounced the general rule that freedom

of speech cannot be curtailed unless it creates a clear and extreme and present danger which is imminent (*Pennekamp* v. *Florida* (1946) 328 U.S. 331 [90 L.Ed. 1295, 66 S.Ct. 1029]; *Craig* v. *Harney* (1947) 331 U.S. 367 [91 L.Ed. 1546, 67 S.Ct. 1249]; *People* v. *American Automobile Ins. Co.* (1955) 132 Cal.App.2d 317 [282 P.2d 559]). Here the court proceedings had been concluded when the letter was printed. There was no threat of tainting these contempt hearings or introducing unfairness into the proceedings. As to the immediacy of the danger, this question has no meaning because the hearings had concluded.[2] In fact, there is a stipulation that publication of the letter did not cause any disturbances or physical interference in the operation of the courts. As to the letter itself, it is not an attempt to obstruct justice. It is the expression of an opinion; to some it is intemperate, in poor taste and suggests immaturity of the author; but, it is not dangerous.

County counsel argues Lloyd's statements regarding a lack of due process were false and, thus, his letter was clearly an attack on the integrity of the court. However, the amount of truth contained in the published material is not a factor in determining whether there is a clear and present danger. (See *Pennekamp* v. *Florida, supra*, 328 U.S. 331.) County counsel suggests Lloyd had an opportunity to calculate and to choose his words, thereby making his act more blameworthy. Again, these are not factors to be considered in finding a person in contempt.

County counsel says Lloyd, as an attorney and officer of the court, may be held to a higher standard of conduct than a layperson. However, the cases cited by counsel deal with disciplinary proceedings under the State Bar Act, not with contempt. (Bus. & Prof. Code, §§ 6067, 6078; *Ramirez* v. *State Bar* (1980) 28 Cal.3d 402 [169 Cal.Rptr. 206, 619 P.2d 399]; *Hogan* v. *State Bar* (1951) 36 Cal.2d 807 [228 P.2d 554].)

County counsel argues a knowingly false statement or a statement made in reckless disregard of the truth should be punished and suggests petitioner made such statements because he was not present at the contempt hearing. Even if Lloyd ought to be punished, it should not be by contempt because his statements do not fall within the United States

---

[2]County counsel suggests, because the trial in which both counsel were appearing was one of high visibility where venue had been changed, Lloyd hoped to inflame and dispose the public to the belief San Diego judges are prejudiced and abuse the legal system. Even assuming all this is true, there is no showing it had any affect on the trial in progress.

Supreme Court guidelines for contempt set out in *Bridges* and its progeny. The county's reference to knowingly false statements may refer to cases involving criticism in the press of public figures in the context of civil libel actions. To prevail in these cases it is necessary to show actual malice or a high degree of recklessness in making false statements. (See *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412]; *Garrison* v. *Louisiana* (1964) 379 U.S. 64 [13 L.Ed. 2d 125, 85 S.Ct. 209].) But this is not a libel action.

A court may punish an attorney for contempt even though the attorney might also be subject to disciplinary proceedings. However, there is no authority for county's suggestion here that Lloyd should be found in contempt because he was from out of town and not a member of any local bar association.

There is no factual basis to support the finding of contempt. The order is annulled.

Cologne, J., and Staniforth, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 8, 1982.