**UNITED STATES of America,
Plaintiff–Appellee,**

**and**

**The State of California;  The State Bar
of California, Intervenors–
Appellees,**

**v.**

**William WUNSCH;  Beverly Wunsch;
Teri Lee Sowers, Defendants,**

**and**

**Frank L. Swan, Respondent–Appellant.**

No. 93–50671.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 1994.

Opinion Filed April 28, 1995.

Rehearing Granted Oct. 12, 1995.

Reargued and Submitted Dec. 12, 1995.

Opinion Withdrawn May 23, 1996.

Decided May 24, 1996.

Carol A. Sobel, ACLU Foundation of Southern California, Los Angeles, California, for respondent-appellant.

Paul L. Seave, Assistant United States Attorney, Sacramento, California; Elana Shavit Artson, Assistant United States Attorney, Santa Ana, California, for plaintiff-appellee.

Karen Leaf, Deputy Attorney General, Sacramento, California, for petitioner-intervenor-appellee.

James M. Wagstaffe and Mark L. Tuft, Cooper, White & Cooper, San Francisco, California, for petitioner-intervenor-appellee.

Robert A. Hawley and Lawrence C. Yee, Office of General Counsel, The State Bar of California, San Francisco, California, for petitioner-intervenor-appellee.

Lynn Hecht Schafran, NOW Legal Defense and Education Fund, New York City, for amici curiae.

Robert M. Ikemi, California Women's Law Center, Los Angeles, California, for amici curiae.

Meir J. Westreich, Glendale, California, for amicus curiae.

Before: BROWNING, FARRIS and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

In this case we are called upon to determine whether the district court properly sanctioned an attorney for conduct that occurred outside the courtroom and after the attorney had ceased to represent any of the parties involved with the proceedings before the court. For the reasons that follow, we reverse.

## FACTS AND PRIOR PROCEEDINGS

This matter arose during the course of a criminal tax prosecution brought by the United States against three defendants, William and Beverly Wunsch and their daughter, Teri Sowers. Shortly after Sowers's arrest by federal agents on March 18, 1993, Frank Swan telephoned Assistant United States Attorney Elana Artson, counsel for the United States. Swan identified himself as Sowers's lawyer and asked about the charges pending against his client, including the conditions for her release. Swan also told Artson that he would be unable to attend Sowers's bail hearing that afternoon, but would send another attorney, Gerald Wilson, in his stead.

On March 24, 1993, Artson moved to disqualify Swan and Wilson from representing Sowers, arguing that their representation of both Sowers and her parents, who at that time were the targets of a grand jury investigation, amounted to a conflict of interest. In a memorandum in opposition filed five days later, Sowers argued that disqualifying Swan would adversely affect her ability to present an effective defense, because Swan had represented both her and her parents since November 1990 in connection with the underlying Internal Revenue Service civil audit and summons enforcement hearings. Sowers also declared that she and her parents were prepared to waive any conflict. On March 29, 1993, Artson filed a supplement to her motion, noting that Swan had previously represented two accountants the government intended to call as witnesses during its case-in-chief.

On April 5, 1993, the district court conducted a hearing at which both Swan and Wilson appeared and argued against the government's motion. The court granted the motion, finding that a serious potential for conflict of interest existed. Sowers filed a motion to reconsider four days later. The following week (i.e., April 15, 1993), a federal grand jury handed down a 14–count superseding indictment containing additional charges against Sowers as well as new charges against the Wunsches. On April 20,

1993, Artson also moved to disqualify Swan and Wilson from representing the Wunsches. Neither Swan nor Wilson filed any opposition to this motion. On April 28, 1993, the district court granted the motion to disqualify them from representing the Wunsches, and denied Sowers's motion to reconsider.

On May 6, 1993, Artson received a letter from Swan. The letter was dated May 3, 1993, and read as follows:

> Dear Elana: I have something here that I think applies to you.
>
> Your disqualification of Wilson and me was neither just nor fair to the defendants. Surely, it serves your interests because now it will be easy for you.
>
> Very truly yours,
>
> /s/ Frank Swan
>
> FRANK L. SWAN, INC.

Appended to the letter was a single sheet of paper with the following photocopied words, all enlarged and in capital letters:

> MALE LAWYERS PLAY BY THE RULES, DISCOVER TRUTH AND RESTORE ORDER. FEMALE LAWYERS ARE OUTSIDE THE LAW, CLOUD TRUTH AND DESTROY ORDER.[1]

On May 10, 1993, the government filed a motion asking the district court to punish Swan for violating Rules 2.5.1 [2] and 2.5.2 [3] of the Local Civil Rules of Practice for the United States District Court, Central District of California ("Local Rules"). In his opposition filed May 21, 1993, Swan argued that the court lacked disciplinary authority (i.e., jurisdiction) over him because he had not appeared in the criminal case and his conduct was unconnected with that litigation. In the alternative, Swan contended that, even if his comments ran afoul of the Local Rules,

they were protected speech under the First Amendment. The government filed its reply on May 28, 1993, and the matter was argued to the court ten days later.

On September 13, 1993, the district court issued its Memorandum Opinion on Order Sanctioning Attorney for Gender–Based Discrimination. *Matter of Swan*, 833 F.Supp. 794 (C.D.Cal.1993). The court found that, by sending the letter to Artson, Swan had violated several Local Rules, including one that incorporated the provisions of a state statute governing attorney conduct. *Id.* at 798–99 & n. 6. The court ordered Swan to write a letter of apology to Artson, and referred the matter to the Central District's Standing Committee on Discipline for any action it might deem appropriate. *Id.* at 800. Swan timely appealed.

By published opinion filed April 28, 1995, we reversed the district court's decision on the grounds that two of the Local Rules in question were inapposite, and the state law provision relied upon by the district court was unconstitutionally vague. *United States v. Wunsch*, 54 F.3d 579, 584–86 (9th Cir. 1995). Shortly thereafter, the State of California and the California State Bar Association (jointly, "California") filed a motion to intervene on appeal and petitioned us to rehear the case, arguing that California had not been given an opportunity to challenge our determination that the statute in question was unconstitutional.[4] After we had granted the motion to intervene, the National Conference of Black Lawyers ("NCBL") sought leave to file a brief as an *amicus curiae* in favor of our decision and in opposition to the arguments advanced by California. On October 12, 1995, we granted NCBL's motion along with California's peti-

---

**1.** Swan copied the attachment from "No Way to Treat a Lawyer," an article from the December 1992 issue of *California Lawyer* that discussed negative gender stereotyping of female attorneys in movies and television.

**2.** That Rule reads, in relevant part: *"Rules of Professional Conduct of the State Bar of California–State Bar Act.* Each attorney shall ... comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act[.] ... Those statutes, rules and decisions are hereby

adopted as the standards of professional conduct of this Court."

**3.** That Rule reads in its entirety: *"Other Standards.* No attorney shall engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein."

**4.** *See* 28 U.S.C. § 2403(b); Fed.R.Civ.P. 24(c); *Fordyce v. City of Seattle,* 55 F.3d 436, 442 (9th Cir.1995).

tion for rehearing. Following additional briefing, we heard oral argument from the parties and parties-intervenor in December 1995.

## ANALYSIS

### Standard of Review

This Circuit has not squarely decided the question of what standard of review should govern appeals from decisions imposing sanctions for attorney conduct found to violate local rules. *Compare United States v. Lopez,* 4 F.3d 1455, 1458 (9th Cir.1993) (de novo) *with Professional Programs Group v. Department of Commerce,* 29 F.3d 1349, 1353 (9th Cir.1994) (abuse of discretion) *and Guam Sasaki Corp. v. Diana's Inc.,* 881 F.2d 713, 715 (9th Cir.1989) (according "great deference" to court's interpretation of its local rules).

■ We have held in the context of Fed. R.Civ.P. 11 that a district court's decision to impose sanctions against an attorney for violating the court's local rules is subject to three levels of review: First, we examine for clear error the court's findings of historical fact; second, we review *de novo* the determination that counsel violated the local rules; and third, we apply an abuse of discretion standard to the district court's choice of sanctions. *Warren v. Guelker,* 29 F.3d 1386, 1388 (9th Cir.1994) (per curiam). We need not decide what the appropriate standard of review should be in the instant appeal, however, because we would reach the same result regardless of which one were applied.

■ With respect to the First Amendment, however, the scope of our review is clear: "Legal and constitutional questions are reviewed *de novo.* In cases . . . raising First Amendment issues, an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not consti-

tute a forbidden intrusion on the field of free expression." *United States Dist. Court v. Sandlin,* 12 F.3d 861, 865 (9th Cir.1993) (internal quotations and citations omitted).

### Discussion

■ The district court cited as authority for its disciplinary action Local Rules 2.2.6,[5] 2.5.1, and 2.5.2; section 6068(f)[6] of California's Business and Professions Code; "and the Court's inherent power[.]" *Matter of Swan,* 833 F.Supp. at 799 n. 6. With respect to the court's inherent power, we note that an attorney admitted to a particular bar may be disciplined for conduct that violates that bar's local rules of professional conduct. *Standing Comm. on Discipline v. Ross,* 735 F.2d 1168, 1170 (9th Cir.), *appeal dism'd & cert. denied sub nom. Frontier Properties v. Elliott,* 469 U.S. 1081, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984). This power to discipline is not limited to conduct that occurs within the course of litigation. *See Western Sys., Inc. v. Ulloa,* 958 F.2d 864, 873 (9th Cir.1992) (as amended), *cert. denied,* 506 U.S. 1050, 113 S.Ct. 970, 122 L.Ed.2d 125 (1993). The questions before us, then, are whether the district court had the authority under the Local Rules to discipline Swan and, if so, whether Swan's conduct amounted to a violation of the Local Rules.

### I. Local Rule 2.2.6

Swan first argues that his removal from the case placed him beyond the reach of Local Rule 2.2.6, the basis upon which the district court relied in asserting disciplinary authority. *Matter of Swan,* 833 F.Supp. at 797. The government contends, and the district court implicitly held, that once Swan had appeared in the underlying criminal proceeding he remained within the reach of the court's disciplinary authority under Rule 2.2.6 for as long as the litigation continued, regardless of his disqualification.[7]

---

**5.** That Rule reads in its entirety: *"Jurisdiction of Court.* Any attorney who appears for any purpose submits to the discipline of this Court with respect to conduct of the litigation."

**6.** Section 6068(f) of California's Business and Professions Code reads, in relevant part: "It is

the duty of an attorney . . . [t]o abstain from all offensive personality[.]"

**7.** The government also contends that, by failing to present this jurisdictional argument to the district court, Swan has waived his right to pursue it on appeal. Regardless of whether or not the issue turns on a question of waivable person-

Rule 2.2.6 provides that "Any attorney *who appears* for any purpose submits to the discipline of this Court *with respect to conduct of the litigation*" (emphasis added). For the purposes of Rule 2.2.6, an attorney becomes subject to the disciplinary authority of the district court when two conditions are met: First, the attorney must actually appear before the court;[8] and second, the behavior for which he is disciplined must have some nexus with the conduct of the litigation before the court. *Id.*

### A. Appearance

Swan argued before the district court, and maintains on appeal, that he never formally entered an appearance on behalf of either Sowers or the Wunsches in the underlying criminal proceeding, and therefore never "appeared" before the district court in connection with that litigation. We reject this contention as finding no support in the record.

The materials before us show that Swan identified himself as Sowers's attorney in his initial telephone contact with Artson on March 18, 1993, and the Designation and Appearance of Counsel form filed later that same day identified Swan as one of Sowers's attorneys. Moreover, the clerk's criminal minutes for Sowers's arraignment listed both Swan and Wilson as defense counsel, and further noted that Wilson was appearing for Swan. In addition, Defendant's Opposition to Motion to Disqualify Defense Counsel, filed March 29, 1993, identified both Swan and Wilson as defense counsel. Further, Swan appeared with Wilson at counsel table during the April 5, 1993 hearing, where he was not sworn as a witness and argued against his own disqualification. We also note that it was Swan, not Wilson, who signed the substitution of attorney forms for the Wunsches, and Swan himself expressly referred to "[y]our disqualification of Wilson *and me* . . ." (emphasis added) in his letter to Artson. Finally, Swan never objected to his being identified as Sowers's attorney.

Swan's every action was consistent with his being exactly what he appeared, and what everyone else took him to be, *viz.,* counsel for the accused. Moreover, Swan could have resolved any doubts concerning his status—and thereby rendered moot all of the government's efforts to have him disqualified—by the simple expedient of telling the court that he was not one of the defense attorneys for either Sowers or the Wunsches. Finally, it is disingenuous for Swan to argue that he had no connection with a case in which he fought so hard against his own disqualification. Accordingly, we find no error in the district court's ruling that Swan had "appeared" before the court during the course of the ongoing litigation.

### B. Nexus

Similarly, we cannot say that the district court abused its discretion by concluding that Swan's actions had the requisite nexus with the conduct of the litigation before the court. *See Professional Programs Group,* 29 F.3d at 1353. The motion to disqualify Swan was litigated during the course of the ongoing tax prosecution. Moreover, Swan's communication to Artson was a direct and immediate response to the district court's decision to bar Swan from participating further in that litigation. Finally, the subject matter of the communica-

al jurisdiction or nonwaivable subject matter jurisdiction, *see* Fed.R.Civ.P. 12(h)(1), (3), we note that the matter involves a question of law in which the facts are not in dispute. Accordingly, we elect to reach the merits of Swan's argument. *See New Hampshire Ins. Co. v. Vieira,* 930 F.2d 696, 702 (9th Cir.1991).

8. Pursuant to the Local Rules, an attorney cannot appear before the district court unless he or she is first "admitted to the Bar of or permitted to practice before this Court." Local Rule 2.1. The nature of this "admission or permission" Rule is laid out in Local Rule 2.2. Admission to the Central District Bar requires that the attorney be a person of good moral character who is an active member of, and in good standing with, the State Bar of California. Local Rule 2.2.1. An attorney not otherwise eligible for admission to the Central District Bar may nonetheless be granted permission to practice before the district court, either on a *pro hac vice* basis or for the limited purpose of representing the United States or its agencies, provided certain conditions not here relevant are first met. *See* Local Rule 2.2.3 (Pro Hac Vice Appearance); Local Rule 2.2.4 (Attorneys for the United States).

tion was Swan's perception of Artson's conduct during those proceedings.

To shield Swan from potential discipline the moment he was disqualified would effectively immunize conduct that was not unconnected with the ongoing prosecution. In light of the great deference we must accord the district court's interpretation of its own Local Rules, *see Guam Sasaki Corp.*, 881 F.2d at 715, we conclude that there was a sufficient nexus between Swan's communication and the ongoing criminal prosecution to support the court's exercise of its disciplinary authority under Local Rule 2.2.6.

## II. Local Rule 2.5.2

As already noted, one of the bases upon which the district court relied in imposing sanctions was Local Rule 2.5.2, which provides that "[n]o attorney shall engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein." *See Matter of Swan*, 833 F.Supp. at 798–99. Swan argues that he should not have been sanctioned under this Rule because his conduct neither impugned the integrity of the court nor interfered with the administration of justice.[9] We agree.

### A. Impugning the Integrity of the Court

■ We begin by noting that, "[O]nce a lawyer is admitted to the bar, although he does not surrender his freedom of expression, he must temper his criticisms in accordance with professional standards of conduct." *Sandlin*, 12 F.3d at 866. When levelled against a court, such criticisms must be viewed objectively rather than in the subjective context of what the critic allegedly intended. *Id.* at 867 (construing Washington local court rule in conjunction with Rule of Professional Conduct involving claim that lawyer defamed trial judge).

No reference to any court or judge appears or is even hinted at in the letter or attachment. Moreover, Swan's criticism "cannot be equated with an attack on the motivation or the integrity or the competence of the judge[ ]." *In re Sawyer*, 360 U.S. 622, 632, 79 S.Ct. 1376, 1381, 3 L.Ed.2d 1473 (1959). Finally, while the attachment impugns "female lawyers" and reveals a patently sexist attitude on Swan's part, the cover letter indicates that Swan's criticism is directed at Artson. "[A] lawyer may criticize ... the prosecution, even to the extent of suggesting wrongdoing ... without by that token impugning the judiciary." *Id.* Accordingly, we reject the government's contention that Swan's conduct impugned the integrity of the court within the meaning of Rule 2.5.2.

### B. Interference with the Administration of Justice

■ The district court cited to two published decisions in support of its conclusion that Swan's sexist communication constituted an interference with the administration of justice under Local Rule 2.5.2. *See Matter of Swan*, 833 F.Supp. at 798 (citing *In re Plaza Hotel Corp.*, 111 B.R. 882 (Bankr.E.D.Cal.), *aff'd without op.*, 123 B.R. 466 (9th Cir. BAP 1990); *Principe v. Assay Partners*, 154 Misc.2d 702, 586 N.Y.S.2d 182 (N.Y.Sup.Ct. 1992)). Neither of these decisions supports the district court's conclusion.

In *In re Plaza Hotel Corp.*, a bankruptcy court disqualified debtor's male counsel in part because of "the gender bias that counsel has exhibited toward the women who represent the chapter 11 trustee and the United States Trustee[.]" 111 B.R. at 891–92. However, the court's criticism of debtor's lawyer was based on more than a display of gender bias. Although he had made slighting oral and written references during the proceedings to the designee as "office help" even though aware that she was a lawyer, debtor's attorney had also refused to assist

---

9. The argument as framed is implied in Swan's contention that the district court's application of Local Rule 2.5.2 to the facts of his case amounted to a violation of his First Amendment rights. Because resolution of this particular constitutional question is unnecessary to the disposition of this issue, we decline to reach the merits of Swan's argument on this point. *See In re Snyder*, 472 U.S. 634, 642–43, 105 S.Ct. 2874, 2879–80, 86 L.Ed.2d 504 (1985). *Cf. Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1442, 1443 (9th Cir.1995) (attorney speech may not be sanctioned absent showing that conduct was "highly likely" to prejudice administration of justice).

the debtor in meeting its obligation to cooperate with the Chapter 11 trustee, and had refused to respond to the designee's written request for full disclosure on a question of conflict of interest. *Id.*

Similarly, in *Principe,* the court sanctioned an attorney for unprofessional conduct in the litigation process, based on a series of demeaning remarks directed against a female attorney at deposition. 586 N.Y.S.2d at 184. The remarks, which included references to the female lawyer as "little lady," "little mouse," "young girl," and "little girl," were accompanied by rude hand gestures and had been made in front of other counsel, the witness, and a court reporter. *Id.* The court concluded that sanctions were appropriate because the attorney's repeated misconduct amounted to an egregious failure to conform to accepted notions, including a recent amendment to a Disciplinary Rule of New York's Code of Professional Responsibility. *Id.* at 185.

In both cases the courts imposed sanctions based on facts showing that each attorney's sexist behavior was not only deplorable, but clearly interfered with the administration of justice. In the instant case, however, we have a single incident involving an isolated expression of a privately communicated bias with no facts that would show how that communication adversely affected the administration of justice, either in this or in any other case. While we decline to hold that a single egregious act of bigotry could never subject an officer of the court to disciplinary sanctions, there has been no showing that Swan's action adversely affected the administration of justice within the meaning of Rule

2.5.2.[10] Accordingly, we must vacate that portion of the district court's decision which finds a violation of Local Rule 2.5.2. *Cf. Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1075, 111 S.Ct. 2720, 2745, 115 L.Ed.2d 888 (1991) (part II of majority opinion; Rehnquist, C.J.) (in order to satisfy the First Amendment, there must be facts showing a "substantial likelihood of material prejudice" to an adjudicative proceeding before a lawyer may be disciplined for extrajudicial comments); *Standing Comm. on Discipline v. Yagman,* 55 F.3d 1430, 1442, 1443 (9th Cir. 1995) (attorney speech may not be sanctioned absent showing that conduct was "highly likely" to prejudice administration of justice).

### III.   Local Rule 2.5.1

The bulk of Swan's argument on appeal involves a challenge to the constitutionality of section 6068(f) of California's Business and Professions Code as incorporated by Local Rule 2.5.1. *Matter of Swan,* 833 F.Supp. at 799 & n. 6. Swan contends that the statute fails, generally on grounds of vagueness and overbreadth, and specifically as applied to him.[11] California offers two related arguments in response: First, we need not reach the merits of Swan's constitutional arguments because section 6068(f) has been narrowly construed to apply only to conduct that adversely affects the administration of justice, and we have already concluded that Swan's conduct did not adversely affect the administration of justice; and second, even if section 6068(f) is applicable, the California courts have sufficiently narrowed the interpretation of section 6068(f) to survive a void-

---

**10.** In a general sense, all manifestations of gender bias related in any way to the adjudicative process affect the administration of justice. *See, e.g.,* Ninth Circuit Gender Bias Task Force, Final Report, "The Effects of Gender in the Federal Courts", 67 *S. Cal. L.Rev.* 745 (1993). Equally clearly, however, the courts cannot punish every expression of gender bias by attorneys without running afoul of the First Amendment. Rule 2.5.2's prohibition of conduct which "interferes with the administration of justice" must be given an interpretation consistent with First Amendment limits on the Court's power.

**11.** The government effectively ignored this contention by arguing that the district court's imposition of sanctions could be upheld on an alterna-

tive, nonconstitutional basis, *viz.,* Local Rule 2.5.2. Because of our conclusion that the district court's imposition of sanctions cannot be upheld under Rule 2.5.2, and owing to the fact that the sanctions rested in part on Rule 2.5.1, which incorporates section 6068(f), we turn to Swan's argument that the statute is unconstitutionally vague. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2996–97, 86 L.Ed.2d 664 (1985) (federal courts must dispose of nonconstitutional grounds for decision prior to reaching constitutional questions). Because we conclude that Cal. Bus. & Prof. § 6068(f) is unconstitutionally vague, *see infra,* we decline to discuss Swan's overbreadth argument.

for-vagueness challenge. We reject both of these contentions.

### A. Inapplicability of Section 6068(f)

■ California cites to numerous state law decisions in support of its contention that, over the past century, the California courts had sufficiently narrowed the interpretation of section 6068(f) to make clear that Swan's conduct in the instant case fell outside the scope of that statute. We disagree. Our review of the California case law dealing with "offensive personality" in the context of the administration of justice fails to reveal a single controlling decision—much less a clear line of authority—that either specifically discusses the scope of section 6068(f) or explicitly limits its applicability to, *e.g.,* courtroom interactions.

To be sure, there are a few reported decisions which give some hint at the limits of section 6068(f). *See, e.g., People v. Espinoza,* 3 Cal.4th 806, 12 Cal.Rptr.2d 682, 689–90, 838 P.2d 204, 211–12 (1992) (as modified) (prosecutor's behavior did not violate section 6068(f) because it was not prejudicial misconduct intended or likely to deceive the jury or affect either the jury's evaluation of the evidence or its verdict), *cert. denied,* —— U.S. ——, 114 S.Ct. 2780, 129 L.Ed.2d 891 (1994); *Lebbos v. State Bar,* 53 Cal.3d 37, 278 Cal. Rptr. 845, 851, 806 P.2d 317, 323 (petitioner was accorded an important constitutional right when the state bar did not consider a derogatory comment she made about a judge as he walked into a cafeteria), *cert. denied,* 502 U.S. 932, 112 S.Ct. 352, 116 L.Ed.2d 291 (1991); *Snyder v. State Bar,* 18 Cal.3d 286, 133 Cal.Rptr. 864, 867, 555 P.2d 1104, 1107 (1976) (attorney sanctioned for filing a fraudulent declaration with offensive descriptions of opposing counsel and opposing parties); *Lloyd v. Superior Court,* 133 Cal.App.3d 896, 184 Cal.Rptr. 467, 469–70 (1982) (as modified) (counsel's letter to a newspaper criticizing judges was an insufficient basis for discipline under section 6068(f) because, inter alia, the court proceedings had concluded by the time the letter had been printed). Nevertheless,

we are unable to discern from these cases any clearly delineated bounds to the reach of Cal.Bus. & Prof.Code § 6068(f).[12]

California argues in the alternative that the enforcement policy recently adopted (i.e., on October 5, 1995) by the California State Bar Association concerning section 6068 limits the application of the statute to conduct adversely affecting the administration of justice. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982) (in evaluating a facial challenge to a state law, the court should consider any limiting construction that a state court or enforcement agency has proffered). This new policy states, in relevant part:

> [T]o avoid constitutional challenges, application of section 6068(f) is limited to conduct prejudicial to the administration of justice, such as conduct unbecoming a lawyer in the courtroom and comments made therein. Purely personal conduct and conduct outside the courtroom are not grounds for section 6068(f) charges. Consistent with case law, section 6068(f) charges are most defensible when narrowly applied to conduct occurring in the courtroom or in any directly related setting, like at a deposition. . . .
>
> Conduct which is deemed "offensive," but not within the parameters of section 6068(f), may be addressed by directional letter emphasizing civility.

We are not persuaded by the above. California has failed to show that this new policy represents an authoritative and binding construction of section 6068(f) rather than a mere enforcement strategy, which would not be binding on the courts. *See, e.g., City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074–75, 71 L.Ed.2d 152 (1982) (despite the city's removal of a vague phrase from an ordinance during the pendency of a court challenge thereto, the court can still determine the constitutionality of the ordinance because "voluntary cessation

---

**12.** Moreover, if the judicial narrowing claimed by California was so obvious, we must ask ourselves how a talented First Assistant United States Attorney for the Central District of Califor-

nia *and* a learned California federal district court judge could have both missed that interpretation and concluded that section 6068(f) *did* apply to Swan's conduct.

of a practice" does not render it moot); *National Advertising Co. v. City of Fort Lauderdale*, 934 F.2d 283, 286 (11th Cir.1991) (city's deletion of allegedly impermissible exceptions from ordinance does not render case moot, because city could later change the ordinance by reinserting the language). Accordingly, we must turn our attention to the vagueness issue.

### B. Void for Vagueness

■ California first contends that Swan must show that section 6068(f) is vague in all of its possible applications in order to sustain a constitutional challenge on the ground of vagueness. This contention is based on a misreading of the standard announced in *Hoffman Estates*, in which the Court actually said:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.

455 U.S. at 494–95, 102 S.Ct. at 1191 (footnotes omitted). The Court then went on to say that, in any vagueness challenge,

> perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

*Id.* at 499, 102 S.Ct. at 1193–94 (footnote omitted). As the statute in question clearly implicates constitutionally protected conduct, *viz.*, free speech, a facial challenge is permissible. *Id.*

■ A statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited. Thus, the Fifth Amendment due process clause requires a statute to be sufficiently clear so as not to cause persons "of common intelligence ... necessarily [to] guess at its meaning and [to] differ as to its application[.]" *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Laws that are insufficiently clear are void for three reasons: (1) To avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on arbitrary or discriminatory interpretations by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms. *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972).

■ Clearly, "offensive personality" is an unconstitutionally vague term in the context of this statute. *See, e.g., Cohen v. California*, 403 U.S. 15, 25, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971) ("disturb[ing] the peace ... by ... offensive conduct" fails to give sufficient notice of what was prohibited). As "offensive personality" could refer to any number of behaviors that many attorneys regularly engage in during the course of their zealous representation of their clients' interests, it would be impossible to know when such behavior would be offensive enough to invoke the statute. For the same reason, the statute is "so imprecise that discriminatory enforcement is a real possibility[,]" *Gentile*, 501 U.S. at 1051, 111 S.Ct. at 2732 (Kennedy, J., minority opinion), and is likely to have the effect of chilling some speech that is constitutionally protected, for fear of violating the statute.

Citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), California argues that a statute otherwise vague on its face can still pass constitutional muster if the courts have provided a narrowing construction of it, and Cal.Bus. & Prof. Code § 6068(f) has been so construed. As already noted, however, we have found no such narrowing by the California courts of the limits to section 6068(f). In fact, California's highest court has yet to decide whether section 6068(f) is unconstitutionally vague. *See, e.g., Espinoza*, 12 Cal.Rptr.2d at 690, 838 P.2d at 212; *Heavey v. State Bar*, 131 Cal.Rptr. 406, 409, 551 P.2d 1238, 1241 (1976)

(court declined to reach the petitioner's constitutional challenge because his conduct was sanctionable under a different rule).

California next argues that section 6068(f) has specific content because it effectively requires the type of conduct mandated by the ethical codes that bind all lawyers. *See In re Sawyer,* 360 U.S. at 646, 79 S.Ct. at 1388 ("a lawyer belongs to a profession with inherited standards of propriety and honor[.] ... He who would follow that calling must conform to those standards.") (Stewart, J., concurring). At least one other court has found this line of argument to be persuasive. *See In re Beaver,* 181 Wis.2d 12, 510 N.W.2d 129, 133 (1994) (upholding Wisconsin's "offensive personality" statute against a similar vagueness challenge in part because of the context in which the phrase is used and the knowledge of ethical standards imputed to attorneys). *See also United States v. Hearst,* 638 F.2d 1190, 1197 (9th Cir.1980) (upholding prohibition against "conduct unbecoming a member of the bar" because the phrase "refers to the legal profession's 'code of behavior' and 'lore,' of which all attorneys are charged with knowledge"), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981).

We find a certain circuity in California's argument. Attorneys are on notice of the reach of section 6068(f) because they are attorneys, and the reach of section 6068(f) is defined by the conduct demanded of those same attorneys. While we have little trouble with the notion that "conduct unbecoming a member of the bar" has some definable substance, we find no such limits to "offensive personality." The cases cited by California in support of its contention that the word "offensive" in other statutes has been upheld against similar vagueness challenges are inapplicable, because what is specific in one context need not be specific in another. *See, e.g., Diaz v. Watts,* 189 Cal.App.3d 657, 234 Cal.Rptr. 334, 340 (1987) (upholding prohibition against "material offensive to any race, gender, nationality, religious faith or similar group" in prison context).

Because we find no merit to any of California's remaining arguments, we conclude that Cal.Bus. & Prof.Code § 6068(f)'s provision

regarding "offensive personality" is unconstitutionally vague, and its incorporation by Local Rule 2.5.1 requires us to set aside that portion of the district court's holding in reliance thereon.

## CONCLUSION

The question before us is not whether Swan displayed a deplorable lack of sensitivity, but whether the district court's decision to impose sanctions on Swan, in addition to whatever sanction(s) the Central District's Standing Committee on Discipline may choose to impose, can be upheld as a matter of law based on the authorities cited. For the reasons set forth above, we conclude that it cannot.

The district court's judgment imposing sanctions against Swan under Local Rules 2.5.1 and 2.5.2 is REVERSED. The parties will bear their own costs on appeal.

FARRIS, Circuit Judge, concurring in part, dissenting in part:

I concur in Parts I & II of the opinion. I disagree with Part III. Since § 6068(f) does not apply to Swan's conduct, there is no reason to decide whether § 6068(f) is void for vagueness.

"The void for vagueness doctrine is concerned with a defendant's right to fair notice and adequate warning that his conduct runs afoul of the law." *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1077–78, 111 S.Ct. 2720, 2746, 115 L.Ed.2d 888 (1991). Section 6068(f) states: "Lawyers are required to abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he or she is charged." The prohibition against "offensive personality" should be read as limited to conduct that affects the administration of justice. Since Swan's conduct did not affect the administration of justice, it is not covered by § 6068. We should "avoid constitutional issues when resolution of such issues is not necessary for disposition of the case." *In Re Snyder,* 472 U.S. 634, 642, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985). If we hold that § 6068(f) does not

apply to Swan's conduct, we should avoid ruling on the constitutionality of § 6068(f).

"[T]here are limitations in the English language with respect to being both specific and manageably brief, .... [and statutes] will not be struck down as vague, even though marginal cases could be put where doubts arise." *Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974), *citing CSC v. Letter Carriers,* 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973). The vagueness doctrine is based on a rough idea of fairness. *Id.* It is not meant to convert into a constitutional dilemma the difficulty involved in drafting a professional code of conduct general enough to cover the variety of attorney misconduct, yet sufficiently specific to provide fair warning.

The Supreme court has recognized that lawyers may be subjected to restrictions on speech that an ordinary citizen cannot. "[T]he speech of lawyers representing clients in pending cases may be regulated under a less demanding standard[.]" *Gentile,* 501 U.S. at 1074, 111 S.Ct. at 2744. "Even in an area far from the courtroom and the pendency of a case ... our decisions ... have not suggested that lawyers are protected by the First Amendment to the same extent as those engaged in other businesses." *Id.* at 1073, 111 S.Ct. at 2744 (referring to advertising restrictions).

Further, attorneys are charged with a knowledge of the legal profession's "lore" or "code of behavior." In *United States v. Hearst,* 638 F.2d 1190 (9th Cir.1980), the court held that Federal Rule of Appellate Procedure 46, which allows a court to sanction an attorney for "conduct unbecoming a member of the bar," is not unconstitutionally vague. "[This language] refers to the profession's 'code of behavior' and 'lore', of which all attorneys are charged with knowledge[.]" *Id.* at 1197. The term "offensive personality" is also part of this 'lore' or 'code of behavior' that attorneys are charged with knowing. *See* Charles Wolfam, *Modern Le-*

*gal Ethics* (1986) at 609 ("Oral altercations between lawyers characterized by derogatory personal comments are traditionally euphemized by the legalese 'offensive personality'.") The dangers of vagueness—lack of fair notice and adequate warning—are lessened with respect to the regulation of the legal profession because a lawyer will understand the context of the statutory language within the code of behavior that all lawyers are charged with knowing.[1]

The majority rejects this argument by finding "a certain circuity" in it. The majority holds that: "While we have little trouble with the notion that 'conduct unbecoming a member of the bar' has some definable substance, we find no such limits to 'offensive personality.' " The rationale offered to support this distinction is that "what is specific in one context need not be specific in another." I find this rationale inadequate to support the distinction.

---

1. See *In re Beaver,* 181 Wis.2d 12, 510 N.W.2d 129, 133–34 (1994), where the Wisconsin Supreme Court held that a similar regulation prohibiting "offensive personality" is constitutional. "A greater degree of flexibility and breadth is permitted in respect to the rules and standards

by which this court regulates the legal profession.... The context in which that provision is promulgated and the cases to which it has been applied render the term understandable by a person who has been licensed as an officer of the court." *Id.*