116 F.3d 487
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth William MEDENBACH, Defendant-Appellant.
 No. 96-30168.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 2, 1997.**
Decided June 5, 1997.
 
 Appeal from the United States District Court for the Western District of Washington, No. CR-96-05185-01-RJB; Robert J. Bryan, District Judge, Presiding.
 Before: WRIGHT, PREGERSON, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Kenneth William Medenbach appeals his conviction and sentence for unlawful possession, occupation, or use of national forest lands for residential purposes and camping on national forest lands for a period longer than allowed by Forest Service order. We have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 1. Sufficiency of the Evidence
 
 3
 Medenbach contends that his conviction on Count I must be reversed because the evidence was insufficient to show that he was camping "for residential purposes." We review the sufficiency of the evidence by determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Strong, 79 F.3d 925, 928 (9th Cir.1996) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 4
 At trial, a Forest Service officer described Medenbach's encampment as consisting of an eight-by-ten-foot tent with a metal flue and wood-burning stove, a nearby campfire, and various cooking and sleeping equipment. The officer testified that Medenbach had claimed adverse possession of the land, expressed an intent to remain at the campsite until he was forcibly removed, and admitted that the campsite was his only residence.
 
 
 5
 Viewed in the light most favorable to the prosecution, this evidence is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Medenbach set up his campsite "for residential purposes."[1] Accordingly, we conclude that the evidence is sufficient to sustain Medenbach's conviction on Count I.
 
 2. The Pretrial Detention Order
 
 6
 The magistrate judge's order of pretrial detention specified that "Defendant poses a risk to the safety of other persons or the community because [he] acknowledges intimidation practices, references 'Ruby Ridge' and 'Waco, Texas,' and clearly would not follow conditions of release restraining his presence at the scene of the alleged unlawful activity." Medenbach contends that the pretrial detention order was impermissibly based upon Medenbach's political beliefs, rather than his actual dangerousness, in violation of the First Amendment and the Bail Reform Act, 18 U.S.C. §§ 3141-42. We review de novo the issue whether the pretrial detention order violated Medenbach's constitutional or statutory rights. United States v. Townsend, 897 F.2d 989, 994 (9th Cir.1990).
 
 
 7
 First, Medenbach argues that the magistrate judge's reliance on the findings that Medenbach "acknowledges intimidation practices" and "references 'Ruby Ridge' and 'Waco, Texas' " violated the First Amendment prohibition against punishing an individual for his mere advocacy of unpopular political beliefs. The record does not support Medenbach's argument. At the initial detention hearing, the government referred the magistrate judge to evidence that Medenbach had attempted to protect his forest campsite with fifty to a hundred pounds of the explosive ammonium sulfate, a pellet gun, and what appeared to be a hand grenade with trip wires. The government also proffered evidence that Medenbach had warned Forest Service officers of potential armed resistance to the federal government's continued control of the forest lands in question. In response to the government's argument, Medenbach asserted that "some intimidation" may be justified "where the government has overstepped its bounds"--whether at Ruby Ridge and Waco, or in the present case.
 
 
 8
 Read in the context of the detention hearing, Medenbach's references to intimidation tactics and the incidents at Ruby Ridge and Waco do not appear to be "mere advocacy" of unpopular political beliefs. Rather, Medenbach's statements evince the type of "incitement to imminent lawless action" that may be regulated consistently with the First Amendment. See Brandenburg v. Ohio, 395 U.S. 444, 447-49 (1969) (per curiam) (holding that First Amendment protects "mere advocacy" of use of force or violation of law, but not "incitement to imminent lawless action").
 
 
 9
 Second, Medenbach argues that the magistrate judge improperly presumed dangerousness for purposes of detention in contravention of the Bail Reform Act's presumption in favor of releasing non-capital offenders. Again, the record does not support Medenbach's argument. The Bail Reform Act prescribes pretrial release "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). In the present case, the evidence of Medenbach's use of various "intimidation tactics" clearly supports a finding of actual dangerousness. In addition, the magistrate judge's conclusion that Medenbach could not be expected to comply with court-ordered conditions of release is clearly supported by Medenbach's attempt at his preliminary appearance to leave the courtroom without the court's permission, his denial of the federal judiciary's legitimacy, and his apparent violation of a felony probation in Oregon.
 
 
 10
 In sum, the record does not show that the magistrate judge improperly presumed Medenbach to be dangerous on the basis of his political beliefs alone. In the context of the other evidence presented, Medenbach's statements concerning "intimidation practices," "Ruby Ridge," and "Waco, Texas," were properly taken into consideration as indications of Medenbach's actual dangerousness. Accordingly, we conclude that the magistrate judge's order of pretrial detention did not violate Medenbach's rights under the First Amendment or the Bail Reform Act.
 
 
 11
 3. Federal Authority over Gifford Pinchot National Forest
 
 
 12
 Medenbach argues that the federal government lacks authority under the Constitution to regulate the Gifford Pinchot National Forest. We review Medenbach's constitutional law claims de novo. United States v. Wunsch, 84 F.3d 1110, 1114 (9th Cir.1996).
 
 
 13
 First, Medenbach contends that the federal government lacks power to regulate the Gifford Pinchot National Forest because the State of Washington never consented to federal jurisdiction over the land for purposes of the Federal Enclave Clause.[2] The state's consent is not a prerequisite to federal regulation of federal lands when Congress acts pursuant to its plenary authority under the Property Clause.[3] Nevada v. Watkins, 914 F.2d 1545, 1554 (9th Cir.1990). To the contrary, Congress may exercise its expansive regulatory powers under the Property Clause regardless of whether it has acquired consent to jurisdiction under the Federal Enclave Clause. Kleppe v. New Mexico, 426 U.S. 529, 542-43 (1976). In the present case, therefore, the federal government has power under the Property Clause to establish and regulate the Gifford Pinchot National Forest--regardless of the State of Washington's consent to federal jurisdiction under the Federal Enclave Clause. See Light v. United States, 220 U.S. 523, 536-37 (1911) (upholding Congress's power under the Property Clause to establish a national forest reserve even absent consent from state where land is located).
 
 
 14
 Second, Medenbach contends that the removal of significant portions of land from the State of Washington's control violates the equal footing doctrine's requirement of equality among the fifty states. We recently rejected a similar argument in United States v. Gardner, 107 F.3d 1314, 1319 (9th Cir.1997). The equal footing doctrine ensures that "all subsequently admitted States enter the Union on an 'equal footing' with the original 13 States." Utah Div. of State Lands v. United States, 482 U.S. 193, 196 (1987). The equal footing doctrine, however, only "applies to political standing and sovereignty, not to economic or physical characteristics of the states."[4] Gardner,107 F.3d at 1319. Thus, the equal footing doctrine is not implicated by the fact that the State of Washington may have within its boundaries more land subject to federal control than do the original thirteen states.
 
 4. Federal Court Jurisdiction
 
 15
 Medenbach contends that the district court lacked jurisdiction to decide his case because the district court judge's oath of office was constitutionally deficient and because the Constitution does not confer upon federal courts the power of judicial review. We review Medenbach's constitutional claims de novo. Wunsch, 84 F.3d at 1114.
 
 
 16
 First, Medenbach argues that the district court judge's oath of office was constitutionally deficient because the statutorily prescribed oath of office set out at 28 U.S.C. § 453 does not mirror the wording of the Constitution itself. The Constitution requires that "all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath of Affirmation, to support this Constitution." U.S. Const. art. VI, cl. 3 (emphasis added). The oath prescribed by statute requires that each federal justice or judge swear to "faithfully and impartially discharge and perform all the duties incumbent upon me ... under the Constitution and laws of the United States." 28 U.S.C. § 453 (emphasis added). Medenbach argues that the district court judge who presided over Medenbach's bench trial lacked judicial authority because he did not swear to "support" the Constitution, only to perform his duties "under" the Constitution. The Constitution does not require that a judge swear verbatim to "support" the Constitution. Thus, we reject Medenbach's claim that the district court judge's oath of office was deficient.
 
 
 17
 Second, Medenbach argues that the federal courts lack any power of judicial review because the Constitution confers upon courts the power only to "support" the Constitution, not to interpret the Constitution. See U.S. Const. art. VI, cl. 3. According to Medenbach, Marbury v. Madison, 5 U.S. 137 (1 Cranch 137) (1803), was therefore wrongly decided. Medenbach offers no reasoning or case law to support his contention that Marbury should be overruled. We conclude that his argument against the constitutionality of judicial review is meritless.
 
 CONCLUSION
 
 18
 The evidence presented at trial was sufficient to support Medenbach's conviction on Count I for unlawful possession, occupation, or use of national forest lands for residential purposes. In addition, Medenbach's challenges to the constitutionality of the pretrial detention order, federal control of Gifford Pinchot National Forest, and federal jurisdiction lack merit. Accordingly, we affirm Medenbach's conviction and sentence on both counts of the information.
 
 
 19
 AFFIRMED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The Forest Service officer also testified that Medenbach stated that he "intended to stay beyond [the twenty-one-day limit] because he wanted to be arrested; that he wanted to make a test case out of this issue. He wanted to show that this federal land ... did not belong to the Forest Service or the federal government...." The evidence that Medenbach deliberately sought arrest to test the government's right to prevent his residential use of the forest is not inconsistent with a determination that Medenbach in fact used the forest for residential purposes. Nothing in 16 U.S.C. § 551 or 36 C.F.R. § 261.10(b) requires that the defendant's residential purpose be his sole or ultimate purpose in using the forest
 
 
 [2]
 Federal Enclave Clause provides that Congress has the power "[t]o exercise exclusive Legislation in all Cases whatsoever ... over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17
 
 
 [3]
 The Property Clause provides that "[t]he Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2
 
 
 [4]
 The only situation in which the Supreme Court has recognized that the equal footing doctrine may require land title to vest in the states rather than the federal government involves title to the shores and beds of navigable waters. See, e.q., Utah Div, of State Lands v. United States, 482 U.S. 193, 196 (1987). Medenbach's case does not involve the shores or beds of navigable waterways, however, and the Supreme Court has declined to extend the equal footing doctrine to cover other lands. See United States v. Gardner, 107 F.3d 1314, 1319 (9th Cir.1997)